## DUNDEE MORTGAGE & TRUST INVESTMENT CO. *v.* HUGHES.

*(Circuit Court, D. Oregon.  April 25, 1884.)*

LIABILITY OF ATTORNEY ON EXAMINATION OF TITLE TO REAL PROPERTY.

> A. applied to a money lender for a loan of $3,000, and offered his note therefor, secured by a mortgage on certain real property; B., the attorney of the money lender, examined the title to the real property and furnished the latter a certificate to the effect that A.'s title was good and the property unincumbered, and thereupon the loan was made on the terms proposed; subsequently and before the maturity of the note it was assigned to the plaintiff, who foreclosed the mortgage and sold the property, when it was found that it was incumbered by a prior mortgage, so that the plaintiff did not realize the amount of his debt by $4,794.35. *Held,* that there was no privity of contract between B. and the plaintiff, and that he was not liable to the latter for the loss.

Action for Damages.

*William H. Effinger,* for plaintiff.

The defendant *in propria personæ.*

DEADY, J.  This action is brought to recover, among other things, damages to the amount of $5,312.35, for losses alleged to have been sustained on two loans on note and mortgage, amounting to $3,300, upon the certificate of the defendant, as an attorney at law, concerning the title of the borrower to the mortgaged premises and the condition of his estate therein.  From what I conceive to be the legal effect of the statement of the first cause of action in the complaint as amended, it appears that "about" April 28, 1877, the Oregon & Washington Trust Investment Company was a corporation formed under the laws of Great Britain, and resident in Dundee, Scotland, and engaged in loaning money in Oregon upon note and mortgage; that the defendant, who was then a practicing attorney in this state, was employed by said corporation to examine the title and condition of the real property offered as security by any one applying to said corporation for a loan; that at this time a loan of $3,000 was made by said corporation to C. W. Shaw, on his promissory note, payable to its order on June 1, 1882, with interest, at the rate of 10 per centum per annum, and secured by a mortgage on certain real property then owned by said Shaw, upon which the defendant certified there was no prior lien or incumbrance; that on December 19, 1879, said corporation "amalgamated" with the plaintiff and "assigned" thereto "all its mortgages," including "all claim, right, and interest to or in or

growing out of this loan to Shaw," who is now "the owner and holder thereof," of which the defendant had notice; that in 1882 the plaintiff requested the defendant "to foreclose said mortgage," and in the course of the proceeding therefor it was ascertained and determined by the decree of this court that the same was subject to a prior mortgage on the premises, so that the whole amount realized by the plaintiff on said loan was $938.25; and that said Shaw is insolvent. The second cause of action, as appears from the original complaint, is upon a certificate given by the defendant to the Oregon & Washington Savings Bank, another British corporation engaged in loaning money in Oregon on note and mortgage, as to the title of property taken by said corporation, as a security for a loan of $300 made to H. H. Howard on November 27, 1876, on his promissory note payable on December 1, 1877, with interest at the rate of 12 per centum per annum, to the effect that said Howard was the owner in fee of the same, and that it was unincumbered; that in 1883 said corporation "found out" that said property was not owned by said Howard, so that the whole amount of said loan was lost; that Howard is insolvent, and the plaintiff is now "the assignee" and "owner" of all the "assets" of said corporation. The defendant demurs to both these statements, for that they do not contain facts sufficient to constitute a cause of action.

In the first statement it is alleged that the loss arising from the insufficiency of the security for the loan was sustained by the Oregon & Washington Trust Investment Company, and that the defendant now owes to said corporation the full amount thereof, to-wit, $4,794.35; and it is also alleged that the plaintiff is now "the owner and holder" of the mortgage, notwithstanding it appears that the same has been "foreclosed" and merged in a decree of this court and partly satisfied from the proceeds of the mortgaged premises; and notwithstanding the further allegation that the defendant "now owes" the amount of this loss to the Oregon & Washington Trust Investment Company. But none of these contradictory allegations are admitted by the demurrer, except such as the law adjudges to be true, (*Freeman* v. *Frank,* 10 Abb. Pr. 370,) and those which are mere conclusions of law and not thereby admitted at all. *Branham* v. *The Mayor, etc.,* 24 Cal. 602; *Hall* v. *Bartlett,* 9 Barb. 297. This action is brought upon the hypothesis that the defendant is now liable to the plaintiff for this loss; but the allegation that he "now owes" the amount thereof to the Oregon & Washington Trust Investment Company is utterly at variance therewith. He cannot be liable on this account to both of them at the same time.

Again, it is alleged that the defendant "guarantied" that the Shaw property was clear of incumbrance. But this is a mere conclusion of law, and the facts stated do not support it. Upon these, the transaction is simply an employment of the defendant by the Oregon & Washington Trust Investment Company to examine and report upon

the title and condition of real property offered as security for a loan by the latter. *Prima facie* there is no element of a guaranty involved in such employment. The defendant only undertook to bring to the discharge of his duty reasonable skill and diligence. He did not warrant or guaranty the correctness of his work any more than a physician or a mechanic does.

It is admitted that if the Oregon & Washington Trust Investment Company had sustained a loss by the negligence or want of skill on the part of the defendant in this matter, the right to recover damages for the same might be assigned to the plaintiff, and it could maintain an action thereon. But taking the facts of the case according to their legal import, and construing contradictory allegations according to the law of the case, the plaintiff does not sue as the assignee of a cause of action accruing to the Oregon & Washington Trust Investment Company during its existence and ownership of the Shaw note and mortgage. The only thing assigned by the latter was this note and mortgage, and, nothing appearing to the contrary, presumably the consideration, therefore, was equal to its par value. It does not appear, then, that the assignor ever lost anything by reason of the incorrectness of the defendant's certificate. Nor could the insufficiency of the surety be absolutely, if at all, determined until the maturity of the note in 1882, while the assignment to the plaintiff was made in 1879.

The only question, then, really in this case is whether the defendant is liable, on this certificate, to any one but his employer, the Oregon & Washington Trust Investment Company. The defendant maintains that he is not, while the plaintiff contends he is; not on the ground of privity of contract between them, or that it was aware of the existence of the certificate, or ever acted on it, or was misled by it, but on the ground that the certificate was a necessary preliminary to the contract of loaning, and therefore an integral part of that contract, operating, of course, as an assurance or security to the person about to make the loan, but as much a part of the transaction as the mortgage itself. This question has been decided by the supreme court in *Savings Bank* v. *Ward*, 100 U. S. 195. The case was this: A., an attorney employed by B. to examine and report on the title of the latter to a certain lot of ground, certified that it was "good," upon which certificate B. procured a loan from C., and gave a mortgage on the property as security. It turned out that B. had parted with the title to the property prior to the date of the certificate—a fact that, in the exercise of reasonable care, might have been learned from the records. The security having proved worthless, and B. being insolvent, C. lost his money, and brought suit against A. for damages. The court held, in the language of the syllabus, "that there being neither fraud, collusion, nor falsehood by A., nor privity of contract between him and C., he is not liable to the latter for any loss sustained by reason of the certificate."

True, Mr. Chief Justice WAITE, with whom concurred Justices SWAYNE and BRADLEY, delivered a dissenting opinion; not upon the general question, however, but on the special ground that it appeared that A. gave his client the certificate in question with knowledge, or reason to know, that he intended to use it in a business transaction with a third person, as evidence of the facts contained therein, and was therefore liable to each person for any loss resulting from a reliance on such certificate, in any particular, which might have been prevented by the exercise of ordinary care and skill on the part of A. But this is not the case. The defendant prepared this certificate at the instance and for the use of his client, the Oregon & Washington Trust Investment Company, and none other. Nor was there anything in the nature of the business that informed him or gave him any reason to believe that any other person would be called upon to act upon it, or part with any right or thing of value on the strength of the representations contained in it. Such a certificate made at the instance of the owner of the property may be used to influence a third person to make a loan thereon; but a certificate made for the information of the lender is presumably made for his use alone, and when the loan is made and the security accepted it is *functus officio* —has performed its office. The defendant is liable to the Oregon & Washington Trust Investment Company for any loss sustained by it on account of any error or mistake in the certificate, arising from a want of ordinary professional skill and care in the preparation of it, and not otherwise. But he is not so liable to the plaintiff, or any third person. There is no privity of contract between them, or any relation whatever.

The ruling is also maintained in *Houseman* v. *Girard M. B. & L. Ass'n*, 81 Pa. St. 256, in which it was held that while the recorder of deeds is liable in damages for a false certificate of title, but only to the party who employs him to make the search, and not his assignee or alienee. And in *Winterbottom* v. *Wright*, 10 Mees. & W. (Exch.) 109, it was held that although the maker of a carriage is liable to the person for whom he makes it, for any loss or injury arising directly from negligence it its construction, that he was not so liable to any third person who might use the same, for the reason there was no privity of contract between them.

The statement of the second cause of action is of the same character as the first; and it is also defective in not stating absolutely that the certificate is untrue. The allegation that in 1883 the bank "found out" that Howard did not own the property, is not in form or effect an averment that he did not own the same and had not title thereto at the date of the certificate. It does not appear to have been "found out" in any judicial proceeding that the certificate was untrue in this respect; and while it may, nevertheless, be shown in this action to be a fact, it must first be alleged, so that issue can be taken on it. Because in 1883 the bank was of the opinion that How-

ard had no title to the land, that did make it so, and the statement of that irrelevant matter is not an allegation by the plaintiff that he was not the owner thereof. Neither does it appear that the bank ever made any assignment of this note and mortgage to the plaintiff or of any claim that may have accrued to it against the defendant for a loss sustained by it on account of any error in this certificate. The allegation that the plaintiff is now the "assignee" and "owner" of the "assets" of the bank is far too vague and indefinite to include this note and mortgage, or such claim, if there is one. The owner of what "assets?" For aught that appears, the bank may have parted with this note and demand before the plaintiff became the owner of its assets. Unless it is shown when the assignment was made and that the bank was then the owner of this "asset," the plaintiff does not show itself entitled to maintain this action, even upon its theory of the law and the defendant's liability. The allegation that the plaintiff is "now" the assignee and owner of the assets of the bank, implies, it is true, an assignment at some time, but it cannot be assumed in favor of the plaintiff that it was more than a day before the commencement of this action — January 9, 1884. But there is no direct allegation in the statement of any loss on the mortgage or of the facts necessary to show one. The statement that the loan was lost to the bank, appears to be a mere inference from the fact that the bank was of the opinion that the mortgagee had no title. And if there was such allegation, and it appeared therefrom that the loss was sustained by the plaintiff, the defendant is not liable for it; while if it was sustained by the bank the defendant is not liable to the plaintiff therefor, unless it should further appear that the right of action thereon has been duly assigned to it.

The demurrer is sustained to both statements.