Anthony J. Di Giovanna, J.
In 1953 plaintiff, licensed engineers and surveyors, prepared a plot plan and drainage map for Weinstoclc, the then owner of the land which is the subject of this action. The map was certified by the plaintiff and approved *678 by the various municipal departments and filed in the County Clerk’s office.
Thereafter the property was sold to Sylkay Realty Corp., which in turn conveyed to the defendants in 1959. The defendants proceeded to construct and sell houses on the land and made deposits with the Village of Hewlett Harbor as security for the improvement of the street known as Pleasant Place shown on the filed plan and map, and then obtained building permits. Construction was commenced by the defendants in accordance with the elevations and grades certified by the plaintiff on the aforesaid map. It became apparent during the course of construction that if the grades and elevations supplied by the plaintiff were to be followed, the completion of the road at those grades and elevations would leave a pre-existing house owned by a third person in a position to suffer from all the run-off water onto its premises. The third person complained to the village authorities and as a result the latter rescinded their prior approval of the aforesaid map and directed the defendants to prepare and file a new drainage plan. The village authorities also refused to issue certificates of occupancy to the defendants unless and until the property owned by the defendants was physically brought into conformity with new and approved drainage plans indicating corrected elevations.
Defendants hired the plaintiff to prepare the corrected maps. In this action compensation is sought for the value of the work, labor and services performed in preparing the corrected maps. The defendants have counterclaimed demanding damages resulting from the errors in the prior map causing the defendants to expend money to correct the errors.
In the court below the counterclaim was dismissed upon a ruling that the Statute of Limitations had run against the counterclaim because it was based on a negligence theory and not on a contract theory. For all practical purposes, the question was presented to this court as to whether the counterclaim stated facts sufficient to constitute a cause of action. Resolution of this question depends upon a determination as to whether the cause of action set forth in the counterclaim is one in negligence or for breach of contract.
The defendants contend that the contract between the plaintiff and the original grantee, Weinstock, whereunder the original map was caused to be filed, entitled them to be considered a beneficiary of that contract within the meaning of Lawrence v. Fox (20 N. Y. 268). The plaintiff contends that there was no privity of contract with the defendants and that consequently no liability can be predicated by reason of the filing of the erroneous *679 map. It has been held that parties to a contract must have intended that a third party should benefit from it in order that the theory of Lawrence v. Fox (supra) could be applied. (Morgan v. Ebco Mach. Corp., 239 App. Div. 346; Skinner Bros. Mfg. Co. v. Shevlin Eng. Co., 231 App. Div. 656.) I believe that the pleaded evidentiary facts, which for the purposes of the motion must be deemed to be true, and the cases interpreting section 334 of the Real Property Law, which is similar in purport and effect to section 334-a which required the recording of the plan in this case, has the effect of constituting the defendants members of a class intended to be benefited by the contract entered into between the plaintiff and the original grantee.
Section 334-a substantially requires that a developer of land in Nassau County for division into lots, plots, blocks or sites, with or without streets, file a map containing courses, measurements, and the names of adjoining property owners with sufficient definiteness. The Clerk of the County of Nassau is required to file that map upon receipt thereof. A provision is set forth subjecting an owner of lands to a penalty because of a failure to file such map.
While no judicial interpretation of that section appears to have been made, in Matter of City of New York (East 177th St.) (239 N. Y. 119, 129), section 334 of the Real Property Law, similar in language and effect to section 334-a was interpreted as follows: “ The purpose of the legislation must, therefore, be considered. Under Real Property Law (§ 334) the filing of a sales map is made compulsory but it is obvious that filing under that section constitutes neither a dedication nor an offer of dedication. Its purpose is merely to make a public record of the map for the sake of definiteness and certainty.”
In Allen Properties v. Brydle (72 N. Y. S. 2d 554) defendant was the owner of property in Patchogue, of which a map had been prepared in 1913. In 1945 plaintiff bought the subject property. It subsequently appeared that a street had been relocated since the preparation and filing of the map. In holding for the plaintiff, the court said (pp. 559-560): “In this case no laches can be imputed to the plaintiff. The plaintiff here, as in the Paine case [Paine v. Upton, 87 N. Y. 327] could not ascertain a mistake from seeing either the external boundaries of the property, or, seeing that North Ocean Avenue ran through it. He wasn’t chargeable with knowledge of its exact location; not when, as here, he purchased on the basis of the filed map. He had a right to rely upon the filed map, as he did. ’ ’ Upon the basis of that case a rule of law can be stated that a certified map filed as a public record is intended for the benefit of subsequent *680 purchasers of the property where it is shown he relied thereon. In Pond v. New Rochelle Water Co. (183 N. Y. 330) it was held that a consumer could maintain an action as beneficiary of a contract between the water company and the city, because the municipality made the contract to protect inhabitants who were consumers and those who became consumers thereafter. It has been held (Kessler v. Haile Motor Co., 127 Misc. 413) that the fact that the particular person who was to benefit from the promise is not known when the promise is made, is immaterial if he be one of a class of persons intended to be benefited.
In Corbin, Contracts (Vol. 4, § 781, p. 70) it is said: “ Of course the beneficiary must be identified before he has an enforceable right; but it is not necessary that he should be identified or identifiable at the time the contract is made.” Similar statements appear in 81 A. L. R. 1285, and Clark, New York Law of Contracts (Vol. 2, § 771, p. 1147).
Similar judicial determinations have been made in Magna Mfg. Co. v. Ætna Cas. & Sur. Co. (129 N. J. Eq. 142) and Stover v. Winston Bros. Co. (185 Wash. 416).
Thus it appears to me that the counterclaim states facts sufficient to constitute a cause of action for breach of contract. Defendants are entitled to the benefit of the doctrine set forth in Lawrence v. Fox (supra). The six-year Statute of Limitations would apply and not the three-year Statute of Limitations applicable to actions based upon the theory of negligence.
The order in favor of the plaintiff dismissing the counterclaim should be reversed and the motion denied, with $10 costs.
Pette and Benjamin, JJ., concur.
Order reversed, etc.