Michael Catalano, J.
The plaintiffs would amend their complaint, without calendar prejudice.
This action is brought to recover substantial damages because of the collapse of the plaintiffs’ bowling alley in Cheektowaga, New York. The defendant, Frank J. Cartwright (herein called “ Frank”), was a duly licensed civil engineer, selected by the general contractor, Cassiol Construction Company, Inc. (herein called “ Cassiol ”), to design, fabricate, erect and install trusses and roofs, and the defendant, Cartwright & Morrison, Inc. (herein called “ Cartwright ”), was similarly selected.
The amendments would include allegations of implied warranty, viz.:
sixteenth : That at all the times hereinafter mentioned the defendant, Frank J. Cartwright, was and still is duly licensed as a civil engineer by the New York State Department of Education and held himself out to be skilled in all phases of civil engineering work, and in the use, design, fabrication, erection and installation of trusses and roofs. That thereby the defendant,
*461 Frank J. Cartwright, impliedly warranted to anyone who might employ the trusses and roofs he so designed, fabricated, erected and installed that said trusses and roofs were of merchantable quality.
sixty-first : That at all the time hereinafter mentioned, the defendant, Cartwright & Morrison, Inc., was and still is engaged in contracting and engineering work and in the work of designing, fabricating, erecting and installing trusses and roofs, and held itself out to be skilled in performing and supervising such work. That thereby the defendant, Cartwright & Morrison, Inc., impliedly warranted to anyone who might employ the trusses and roofs it so designed, fabricated, erected and installed that said trusses and roofs were of merchantable quality.
sixty-third: That Cassiol Construction Company, Inc., selected and retained the defendants, Frank J. Cartwright and Cartwright & Morrison, Inc., to design, fabricate, erect and install the trusses and roof of said building. That the plaintiffs informed and advised the defendants, Frank J. Cartwright and Cartwright & Morrison, Inc., of the particular purpose for which the said trusses and roof were required and that the defendants, Frank J. Cartwright and Cartwright & Morrision, Inc., did design, fabricate, erect and install the said trusses and roof and the plaintiffs relied on the said defendants’ skill and judgment as respects the use, design, fabrication, erection and installation of said trusses.
For many years our statutory law provided, and still provides : ‘ ‘ There is only one form of civil action. The distinctions between actions at law and suits in equity, and the forms of those actions and suits, have been abolished.” (Originally revised from Code Pro., § 69; in Code Civ. Pro., § 3339 without change; Civ. Prac. Act, § 8, same; CPLR, § 103, subd. [a], off. Sept. 1,1963.)
As of September 1,1963, the statutory extension will be: “If a court has obtained jurisdiction over the parties, a civil judicial proceeding shall not be dismissed solely because it is not brought in the proper form, but the court shall make whatever order is required for its proper prosecution.” (CPLR, § 103, subd. [c].)
For over 100 years our highest court has insisted that regardless of the statutory abolition of all distinctions among mere forms of action, yet actions vary in their intrinsic nature which “no law can abolish;” (Goulet v. Asseler, 22 N. Y. 225, 228 [1860]; see, also, Sadler v. City of New York, 185 N. Y. 408, 414) and the distinctions between actions ex contractu (from contract) and ex delicto (from delict, tort or crime) are clearly recognized. (Austin v. Rawdon, 44 N. Y. 63, 71 [1870].)
Tort liability has been enforced, without contractual relations between the parties, upon the theory that defendant well knew the purposes for which its manufactured, inherently-dangerous product would be used and could reasonably foresee the danger of injury to the plaintiff. (Statler v. Ray Mfg. Co., 195 N. Y. 478, 480 [1909]; see, also, MacPherson v. Buick Motor Co., 217 N. Y. 382, 389 [1916].)
*462 In the MacPherson case (ibid.), Judge Cabdozo, speaking for the court, said (p. 390):
“We are not required at this time to say that it is legitimate to go hack of the manufacturer of the finished product and hold the manufacturers of the component parts. * * *
“We have put aside the notion that the duty to safeguard life and limb, when the consequences of negligence may be foreseen, grows out of contract and nothing else. We have put the source of the obligation where it ought to be. We have put its source in the law. ’ ’
In 1911, our Legislature added article 5, “ Sales of Goods,” to the Personal Property Law (L. 1911, ch. 571), including section 96, “Implied warranties of quality,” that provides, in part:
“ Subject to the provisions of this article and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows :
“ 1. Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller’s skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.
‘ ‘ 2. Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality.”
Although nothing in this statute mentions the phrase ‘1 privity of contract,” our highest court thereafter held:
‘ ‘ The general rule is that a manufacturer or seller of food, or other articles of personal property, is not liable to third persons, under an implied warranty, who have no contractual relations with him. The reason for this rule is that privity of contract does not exist between the seller and such third persons, and unless there be privity of contract, there can be no implied warranty.” (Chysky v. Drake Bros. Co., 235 N. Y. 468, 472 [1923].)
In 1931 Chief Judge Cabdozo observed: “ The assault upon the citadel of privity is proceeding in these days apace. How far the inroads shall extend is now a favorite subject of juridical discussion [authorities omitted]. In the field of the law of contract there has been a gradual widening of the doctrine of Laurence v. Fox (20 N. Y. 268), until today the beneficiary of *463 a promise, clearly designated as such, is seldom left without a remedy (Seaver v. Ransom, 224 N. Y. 233, 238).” (Ultramares Corp. v. Touche, 255 N. Y. 170, 180-181.)
Shortly thereafter, the Court of Appeals stated: “ The requirement of some obligation or duty running from the promisee to the third party beneficiary has been progressively relaxed until a mere shadow of the relationship suffices, if indeed it has not reached the vanishing point.” (McClare v. Massachusetts Bonding & Ins. Co., 266 N. Y. 371, 379.)
Chief Judge Desmond, speaking of the privity rule, said: ‘ ‘ But the present rule which we are being asked to modify is itself of judicial making since our statutes say nothing at all about privity and in early times such liabilities were thought to be in tort [authorities omitted]. Alteration of the law in such matters has been the business of the New York courts for many years [authorities omitted].” (Greenberg v. Lorenz, 9 N Y 2d 195, 199-200; see, also, Badigian v. Badigian, 9 N Y 2d 472, 481.)
Judge Ftjld, speaking for the court, said: “ and, just a year ago, in Greenberg v. Lorenz (9 N Y 2d 195), we noted the definite shift away from the technical privity requirement and recognized that it should be dispensed with in a proper case in the interest of justice and reason.” (Randy Knitwear v. American Cyanamid Co., 11 N Y 2d 5, 11.)
Although the Fourth Department has held that such implied warranty would not necessarily extend to any person who might use the article involved (Thomas v. Leary, 15 A D 2d 438, 443); nevertheless, the Second Department has construed the Randy case (supra, p. 16) to state that the majority of the Court of Appeals has dispensed, without qualification, with the court-made traditional requirement of privity. (Williams v. Union Carbide Corp., 17 A D 2d 661, 662.)
As of May 9,1963, Chief Judge Desmond, speaking for a bare majority of the court, said: “ A breach of warranty, it is now clear, is not only a violation of the sales contract out of which the warranty arises but is a tortious wrong suable by a non-contracting party whose use of the warranted article is within the reasonable contemplation of the vendor or manufacturer.” (Emphasis supplied.) “ [W]here an article is of such a character that when used for the purpose for which it is made it is likely to be a source of danger to several or many people if not properly designed and fashioned, the manufacturer as well as the vendor is liable, for breach of law-implied warranties, to the persons whose use is contemplated.” Then, in verbal concurrence with Judge Cabdozo writing in 1916 (MacPherson v. Buick Motor Co., 217 N. Y. 382, 390), he concluded: “ However, *464 for the present at least we do not think it necessary so to extend this rule as to hold liable the manufacturer (defendant Kollsman) of a component part. Adequate protection is provided for the passengers by casting in liability the airplane manufacturer which put into the market the completed aircraft. ’ ’ (Goldberg v. Kollsman Instrument Corp., 12 N Y 2d 432, 436-437.)
Whether sounding in tort or contract, valid reasons for limiting the privity rule to allow recovery by an owner, who contracted with a general contractor for a completed building housing bowling alleys against the manufacturer who designed, fabricated, erected and installed defective trusses and roofs, are present. The manufacturer well knew the purposes for which its inherently dangerous product would be used without new tests. He could reasonably foresee the danger of injury and damage to the owner, who made known to him the particular purpose for which the product was required, with full reliance upon his skill and judgment. ’ The owner was á third-party beneficiary of the manufacturer’s promise and implied warranty made to the contractor. It was the manufacturer’s roof that collapsed causing all, or most, of the owner’s damage, thus, in the interest of justice and reason, the manufacturer should respond in damages.
The Legislature has provided, in effect, that where the court has jurisdiction over the parties, let every wrong have a remedy, or let the court make whatever order is required for the proper prosecution of a civil proceeding not brought in the proper form. This is the substance of subdivision (c) of section 103 of the Civil Practice Law and Rules, effective September 1, 1963.
The economic structure of the community will not suffer if a right violated results in a duty to be fulfilled. Where joint or several wrongdoers may escape liability merely’ because the victim has a remedy against less than all, those who. escape the burden of paying their fair share of the damage are unjustly privileged. Whether or not the malfeasor planned adequately by insurance or otherwise to meet a contingency brought about by his wrong is not a valid judicial query. Unless either the Legislature or the Constitution provides otherwise, the innocent should have a proper remedy against the guilty. Semantics and names based on form should give way to sound justice resting on substantial reasons. When the reason for a rule is gone, the rule is worth nothing.
Amendments to pleadings should be freely allowed in the absence of laches, prejudice and unfair advantage. (Amherst Bowling Center v. Dolce, 11 A D 2d 1079 [4th Dept.].)
Motion granted, without prejudice. No costs.