(No. 40714.—

RAYMOND A. ROZNY, JR., *et al.,* Appellants, *vs.* JOHN MARNUL, d/b/a Jens K. Doe Survey Service, Appellee.

*Opinion filed May 26, 1969.—Rehearing denied September 23, 1969.*

WESTBROOK, JACOBSON AND BRANDVIK, of Chicago, (LOWELL H. JACOBSON and JAMES A. BRANDVIK, of counsel,) for appellants.

TOM L. YATES, of Chicago, (LEIF J. LOCKE and CARL E. ABRAHAMSON, of counsel,) for appellee.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiffs Raymond A. Rozny, Jr. and Catherine M. Rozny, husband and wife, purchased a house and lot which was described in a plat of an admittedly inaccurate survey prepared by defendant for S. & S. Builders, apparently a firm engaged in real-estate development. Plaintiffs brought this action for damages in the circuit court of Cook County

and recovered a judgment entered on a jury verdict in the amount of $13,350. The defendant appealed and the First District Appellate Court reversed, one member dissenting. (83 Ill. App. 2d 110.) We granted leave to appeal.

Defendant made the original, inaccurate "spot" survey of this vacant lot on August 27, 1953. Subsequently, a house was erected on this lot, and on August 21, 1955, defendant issued a written location "plat of survey" for the same property, this time apparently simply showing on the original plat the location of the building. Defendant did not know the person for whom he did this survey but believed it was for a builder, one Harold Nash, who had apparently purchased the property from S. & S. Builders subsequent to the original survey.

The city of Park Ridge issued a building permit to Nash on June 27, 1955. The Park Ridge Federal Savings and Loan Association made a loan commitment of $14,000, upon his application accompanied by a Torrens title certificate and the inaccurate survey of August 21, 1955. This is the only survey the association had in connection with the property, and without a survey, showing the house properly located, the association would not have financed the purchase. The mortgage covering the property in question was recorded August 25. Defendant testified that he discovered the August 21 survey was inaccurate and issued a corrected survey on August 27. He first stated it was regular procedure to send the corrected blueprints to whomever ordered the originals, and then testified he had no record of sending them and actually had no recollection of what occurred. The association never received the so-called corrected survey nor was it ever informed of its existence, nor is there in this record any showing that Nash or anyone else ever received a copy of the corrected survey.

Plaintiffs first saw the property in January, 1956, when the builder, Nash, showed it to them. They agreed to purchase the property and went to the association where one

of its officers advised them there was an existing construction loan to Nash of $14,000 on the property, and that plaintiffs could finance the purchase by assuming that mortgage. All the documents concerning the property, including the incorrect survey which was then in the files of the Association, were reviewed by plaintiffs with this officer at the closing of the purchase in February.

In September, 1956, the existing driveway leading to the back of the house was extended and plaintiffs constructed a garage on the rear of the lot, relying upon an iron pipe in the backyard fence and a mark on the front sidewalk shown by the plat as the *indicia* of their boundary limits. That plat shows an iron pipe at each of the back corners of the lot and a mark on the sidewalk two feet north of each of the front corners. Had these markers been correctly located, adequate space would have existed for the driveway. In fact, these markers had been placed in accordance with the inaccurate survey, and, as a result, portions of the existing driveway and the new driveway extended over the west lot line, and the west edge of the garage encroaches on the adjacent lot from 2″ to 1′ 2″. Plaintiffs tesified that the first time their attention was called to any possible encroachment or survey errors was about two years before the trial, which occurred in September, 1964.

The August 21 survey was signed by defendant and had his Illinois surveyor's seal affixed thereto. (He was a registered Illinois land surveyor. (Ill. Rev. Stat. 1955, ch. 133, pars. 34 through 54.)) Printed on the survey plat was the following:

#### "IMPORTANT

"Before starting any excavating or building, excavators and builders are requested to compare all measurements and should any discrepancies be found, report same to our home office at once.

"This plat of survey carries our absolute guarantee

for accuracy, and is issued subject to faithful carrying out of the above and foregoing instructions and conditions before any liability will be assumed on part of the Jens K. Doe Survey Service.

"State of Illinois } ss
County of Cook }

I, John Marnul, hereby certify that I have resurveyed and located the building on the property above described and that the plat above is a correct representation of said survey and location.
Chicago, August 21st, A.D. 1955.

Licensed Surveyor with

JENS K. DOE SURVEY SERVICE"

At the trial, Olaf Nilsen, a housemoving and shoring contractor, testified that the estimated cost of moving the house 2 feet and garage 6 feet and rehabilitating both would be $13,030.

The jury returned a verdict against defendant in the sum of $14,000, which was later reduced by a voluntary remittitur to $13,350, and judgment entered in that amount. The appellate court reversal was predicated on its opinion that the action was one of "contract", the plaintiff was not in privity with the defendant and therefore could not maintain the action.

Plaintiffs contend that under what is or should be the law of this jurisdiction there are numerous theories of recovery available to a party not in privity of contract with the defendant, including (1) strict liability in tort, (2) implied warranty free of the privity requirement, (3) third-party beneficiary doctrine, (4) express warranty free of the privity requirement, and (5) tortious misrepresentation.

We have previously referred to the similarity between strict liability in tort and the various implied warranties in the products liability area. (*Suvada* v. *White Motor Co.,*

32 Ill.2d 612.) In *Suvada,* in accordance with section 402A of the Restatement (Second) of Torts, we imposed strict liability in tort on those who are sellers of products in a defective condition unreasonably dangerous to the user or consumer. There is nothing in this record indicating in what manner this survey could be found to be an unreasonably dangerous product within the language or rationale of section 402A. Nor need we determine what warranties the law might imply in the issuance of a plat, for the plaintiffs' claim (and our decision) is based upon the express representation of accuracy made by the defendant and appearing on the face of the plat. See *Inglis* v. *American Motors Corp.,* 3 Ohio St. 2d 132, 209 N.E.2d 583, 588.

While plaintiffs also invite us to treat this as a third-party beneficiary action and thus permit plaintiffs to sue as the beneficiaries of an express written warranty contract between defendant and the builder, Nash, it is clear that that contract was not made for the direct benefit of the plaintiffs as "direct benefit" has been traditionally interpreted in connection with third-party beneficiary actions. (*Cherry* v. *Aetna Casualty & Surety Co.,* 372 Ill. 534; *Carson Pirie Scott & Co.* v. *Parrett,* 346 Ill. 252, 257-58.) Although we are aware of cases, (*e.g. Rhodes Pharmacal Co.* v. *Continental Can Co.,* 72 Ill. App. 2d 362; *50 New Walden, Inc.* v. *Federal Ins. Co.,* 39 Misc. 2d 460, 241 N.Y.S. 2d 128) which evidence the increasing disregard for the privity requirement through continued expansion of the class of permissible plaintiffs under the third-party beneficiary doctrine, and realize that in factual situations similar to the instant case recovery has been granted under this theory, (*e.g., Vandewater & Lapp* v. *Sacks Builders, Inc.,* 20 Misc. 2d 677, 186 N.Y.S. 2d 103) we believe the fundamental reasoning underlying the tortious misrepresentation theory more nearly accommodates this case than the expanded third-party beneficiary doctrine.

Plaintiffs also urge that recovery could be granted under

a theory of express warranty free of the privity requirement. Indeed, there are many product liability cases granting recovery to a third person on the theory of express warranty to the consumer. (See Prosser, Law of Torts, 3d ed. ch. 19, § 97, at 684.) As pointed out by Dean Prosser, a leading case in developing the theory of express warranty to the consumer was *"Baxter* v. *Ford Motor Co.,* (168 Wash. 456, 12 P.2d 409, 15 P.2d 1118) where the court at first found a warranty in disseminated literature stating that the glass in an automobile windshield was shatterproof, but on a second appeal (179 Wash. 123, 35 P.2d 1090) justified the recovery on the basis of strict liability for misrepresentation." (Prosser, Misrepresentations and Third Persons, 19 Vand. L. Rev. 231, 238.) If the liability under this theory is to be called one of "warranty" it must be noted that it is a different kind of warranty than the warranties between the immediate contracting parties. (See Restatement (Second) of Torts, § 402B, Comment (e) and § 402A, Comment (c).) Under this theory of express warranty to the consumer the basis of liability is in tort not in contract; therefore, the privity requirement traditionally used to define the scope of the liability in contract is not applicable. (*Greenman* v. *Yuba Power Products, Inc.,* 59 Cal.2d 57, 63, 377 P.2d 897, 907.) The principles developed in those cases, wherein recovery was based upon "direct warranty to the consumer" or "misrepresentation", have been adopted by the American Law Institute in Restatement (Second) of Torts (1965), § 402B. The Restatement uses the language of misrepresentation to make it clear that the basis of liability is tort and expressly states that the privity of contract requirement is not applicable.

Section 402B and a parallel rule relating to pecuniary loss were adopted by the Tennessee Supreme Court in the recent case of *Ford Motor Co.* v. *Lonon,* 217 Tenn. 400, 398 S.W.2d 240. After stating that "the decision in the present case is based upon the ground that the manu-

facturer has committed the tort of misrepresentation rather than a breach of warranty  *  *  *" the court noted that it was not necessary to deal with the privity requirement traditional in contractual warranty cases. "Where  *  *  * the plaintiff can establish representations to the public, justifiable reliance on these representations, and the other matters necessary to bring his case under the rules developed in 2 Restatement (Second) Torts, § 402B and a parallel rule concerning pecuniary loss we consider that recovery is justified, both for physical and pecuniary loss, on grounds of misrepresentation, even though there is no direct contract relationship between the parties." 398 S.W.2d at 248.

This process of adhering to or eliminating the privity requirement has proved to be an unsatisfactory method of establishing the scope of tort liability to third persons. Because of the difficulties in applying the rule, courts created exceptions deemed necessary to achieve desirable results which were not always completely reconcilable. (See *Spence v. Three Rivers Builders & Masonry Supply, Inc.,* 353 Mich. 120, 90 N.W.2d 873, 878.) To eliminate any uncertainty still remaining after *Suvada* v. *White Motor Co.,* 32 Ill.2d 612, 617, we emphasize that lack of direct contractual relationship between the parties is not a defense in a tort action in this jurisdiction. Thus, tort liability will henceforth be measured by the scope of the duty owed rather than the artificial concepts of privity.

Having discarded any remnants of the privity concept, we now concern ourselves with the scope of defendant's liability using traditional tortious misrepresentation standards.

The principle that performance of a private contract can give rise to duties in tort seems to have been first articulated in the 19th century (see *Thomas* v. *Winchester,* 6 N.Y. 397; 116 U. Pa. L. Rev. 500.) While attempts to recover by third parties injured by negligent performance of contractual duties had generally failed because of a lack of privity (*Winterbottom* v. *Wright,* 152 Eng. Rep. 402; *Na-*

*tional Savings Bank* v. *Ward,* 100 U.S. 195, 25 L. Ed. 621), this restriction in cases involving physical injuries was lifted in cases such as *MacPherson* v. *Buick Motor Co.,* 217 N.Y. 382, 111 N.E. 1050, and *Heaven* v. *Pender,* 11 Q.B.D. 503. These extensions of liability, however, generally involved negligence resulting in tangible physical harm and not merely loss to intangible economic interests. (Katsoris, Accountants' Third Party Liability—How Far Do We Go?, 36 Fordham L. Rev. 191; Levitin, Accountants' Scope of Liability for Defective Financial Reports, 15 Hastings L.J. 436.) Further extension to the intangible economic interests soon resulted. (*Glanzer* v. *Shepard,* 233 N.Y. 236, 135 N.E. 275.) There, liability was predicated upon the fact that the public weigher of beans at a seller's request was liable to the buyer damaged by negligent overstatement of the weight because the weigher knew the buyer would rely on the erroneous weight statement. While the later case of *Utlramares Corp.* v. *Touche, Niven & Co.,* 255 N.Y. 170, 174 N.E. 441, held an auditing firm which negligently certified an inaccurate audit not liable to one who, in reliance upon the audit, loaned money to the actually insolvent firm, the court carefully distinguished *Glanzer* on the grounds that there the weight statement was "primarily" for the use of the purchaser while the *Ultramares* audit statement was only "incidentally" for the use of third parties. However, the facts of the two cases are such that it seems clear that the more persuasive factor was the existence in *Ultramares* of potential "liability in an indeterminate amount for an indeterminate time to an indeterminate class."

It is apparent that many of the courts which have considered analogous situations have thought the potential liability of one who negligently supplies inaccurate information to be such as to militate against imposing liability when the person ultimately damaged was one whose reliance on the information might have been called "foreseeable", (*National Iron and Steel Co.* v. *Hunt,* 312 Ill. 245; *Albin* v.

*Illinois Crop Improvement Ass'n, Inc.,* 30 Ill. App. 2d 283;
accord, *e.g., National Savings Bank* v. *Ward,* 100 U.S. 195,
25 L. Ed. 621; *Peterson* v. *Gales,* 191 Wis. 137, 210 N.W.
407; *Sickler* v. *Indian River Abstract & Guaranty Co.,* 142
Fla. 528, 195 So. 195; *Dundee Mortgage & Trust Inv. Co.*
v. *Hughes* (C. C. Ore. 1884), 20 Fed. 39; *Cohen* v. *Trades-
man's Nat. Bank,* 262 Pa. 76, 105 Atl. 43; *Talpey* v.
*Wright,* 61 Ark. 275, 32 S.W. 1072; *Thomas* v. *Guarantee
Title & Trust Co.,* 81 Ohio St. 432, 91 N.E. 183; Annot.
34 A.L.R. 63, 68 A.L.R. 375; see generally, Note, Liability
of a Testing Company to Third Persons, 1964 Wash.
U.L.Q. 77, 81-94. *Contra, National Saving Bank* v. *Ward,*
100 U.S. 195, 207, 25 L. Ed. 621, 625 (dissent); *Du Rite
Laundry, Inc.* v. *Washington Elec. Co.,* 263 App. Div. 396,
33 N.Y.S. 2d 925; *Hedley Byrne & Co., Ltd.* v. *Heller Part-
ners, Ltd.,* (1964) A. C. 465; but see *M. Miller Co.* v.
*Central Contra Costa Sanitary Dist.* 198 Cal. App. 2d 305,
18 Cal. Rptr. 13; *Texas Tunneling Co.* v. *City of Chat-
tanooga* (E. D. Tenn. 1962) 204 F. Supp. 821, rev'd (6th
cir. 1964) 329 F.2d 402), but have been willing to impose
liability when the reliance of the third person might have
been said to be "known". (*Glanzer* v. *Shepard,* 233 N.Y.
236, 135 N.E. 275; *Brown* v. *Sims,* 22 Ind. App. 317, 53
N.E. 779; *Western Loan Savings Co.* v. *Silver Bow Ab-
stract Co.,* 31 Mont. 448, 78 Pac. 774; *Economy Bldg &
Loan Co.* v. *West Jersey Title & Guar. Co.,* 64 N.J.L. 27,
44 Atl. 854; *Dickel* v. *Nashville Abstract Co.,* 89 Tenn.
431, 14 S.W. 896; *Doyle* v. *Chatham and Phenix Nat.
Bank,* 253 N.Y. 369, 171 N.E. 574; *Motley* v. *Mercantile
Trust Co.,* No. 49879 (Division No. 1 of the Supreme
Court of Mo. 1963); *Craig* v. *Everett M. Brooks Co.*
351 Mass. 497, 222 N.E.2d 752. *Contra, Investment Corp.
of Florida* v. *Buchman* (Fla. App. 1968), 208 So. 2d 291;
*Bilich* v. *Barnett,* 103 Cal. App. 2d 921, 229 P.2d 492.) Al-
though the absence of privity may have been the stated rea-
son for denying liability, it seems likely that the virtually

unlimited and unknown potential responsibility of the defendant weighed heavily in the courts' thinking. (Some courts in addition to *Ultramares* candidly state this reason, *e.g., Anderson* v. *Boone County Abstract Co.* (Mo. 1967), 418 S.W.2d 123, 127.)

An excellent article by Dean Prosser, Misrepresentation and Third Persons (1966), 19 Vand. L. Rev. 231, discusses a number of the factors which have affected the decisions in third-party misrepresentation cases. In the class of cases where "plaintiff is an unidentified member of a group or class [and] defendant has special reason to expect that any member of it may be reached and influenced" by his representation, the liability for negligent misrepresentation resulting in pecuniary loss has been mixed. (19 Vand. L. Rev. at 246.) The article discusses the *Ultramares* case and notes that other decisions concerning accountants are in accord. It is then stated: "But what if the defendant is informed that his representation is to be passed on to some more limited group, as a basis for action on the part of one or more of them? In *M. Miller Co.* v. *Central Contra Costa Sanitary District,* [198 Cal. App. 2d 305, 18 Cal. Rptr. 13] a California decision, an engineering company was hired to prepare a soil report, knowing that it was intended to be made available to all bidders for work on a sewer system and to be used by the successful bidder to do the work. It prepared the report negligently and the bidder lost money; accordingly it was held liable for negligent misrepresentation. The same conclusion, upon quite similar facts, was reached by the district court in *Texas Tunneling Co.* v. *City of Chattanooga* [204 F. Supp. 821]; but on appeal [329 F.2d 402] the Sixth Circuit reversed the decision and held that there was no liability." 19 Vand. L. Rev. at 249.

It should be pointed out that *Texas Tunneling* was decided prior to the Tennessee Supreme Court's decision of *Ford Motor Co.* v. *Lonon,* 217 Tenn. 400, 398 S.W.2d 240, hereinbefore discussed, which expanded the scope of re-

covery under the theory of misrepresentation in that State. Even more important in our case is that the Sixth Circuit laid considerable stress upon a disclaimer of accuracy and responsibility contained in the report itself. In contradistinction the defendant's plat here contained his unlimited "absolute guarantee for accuracy." Since the above article was written, *Rusch Factors, Inc.* v. *Levin* (D.R.I., 1968), 284 F. Supp. 85, was decided in accordance with the article's prediction that of the two—*Miller* and *Texas Tunneling*—"the *Miller* decision * * ' * is the more likely to be followed." 19 Vand. L. Rev. at 250.

We agree that the unknown and unlimited liability factor, as so ably stated by Mr. Justice Cardozo in the *Ultramares* case, is not to be lightly discounted. But we deal here with a defendant who has included on his inaccurate plat an "absolute guarantee for accuracy." As might reasonably have been foreseen by defendant who admitted he knew the plats were customarily used by lending agencies and others, that plat was subsequently relied on to his damage by a third party in connection with the financing and purchase of the surveyed property. Under these circumstances it seems to us the fortuitous circumstance that the ultimate loss resulting from the faulty survey fell upon one other than the person for whom the survey was made should not absolve defendant from responding in damages. The situation is not one fraught with such an overwhelming potential liability as to dictate a contrary result, for the class of persons who might foreseeably use this plat is rather narrowly limited, if not exclusively so, to those who deal with the surveyed property as purchasers or lenders. Injury will ordinarily occur only once and to the one person then owning the lot.

Moreover, we believe the proposed revision of the Restatement (Second) of Torts, § 552, (Tent. Draft No. 12, 1966), is apposite in this situation. While the draft has not yet been adopted, it apparently recognizes liability to a

nebulous group whose reliance on the survey was something more than foreseeable but something less than identifiably known. In the case before us the fact that those who subsequently dealt with the property would rely on the plat was not only foreseeable, it was, by defendant's own testimony, known to him.

And, even in the accounting field where the potential liability argument is much more persuasive than here, two recent cases have held liability could exist to third parties whose reliance was foreseeable by the negligent accountant. (*Rusch Factors, Inc.* v. *Levin* (D.R.I., 1968), 284 F. Supp. 85; *Fischer* v. *Kletz* (S.D.N.Y., 1967), 266 F. Supp. 180.) The basis of liability in *Fischer* was defendant's failure to disclose after-acquired information which invalidated the accuracy of facts earlier certified to be correct. (*Cf. Drake* v. *Thor Power Tool Co.* (N.D. Ill., 1967), 282 F. Supp. 94.) While we believe it unnecessary here to consider the questions of existence and scope of a duty on defendant's part to disclose to those whose earlier use of the plat was foreseeable the fact that it was incorrect, it is not without significance that the record contains no proof that anyone was actually informed by defendant of the error.

As is apparent from the foregoing discussion, the factors we consider relevant to our holding are:

(1) The express, unrestricted and wholly voluntary "absolute guarantee for accuracy" appearing on the face of the inaccurate plat;

(2) Defendant's knowledge that this plat would be used and relied on by others than the person ordering it, including plaintiffs;

(3) The fact that potential liability in this case is restricted to a comparatively small group, and that, ordinarily, only one member of that group will suffer loss;

(4) The absence of proof that copies of the corrected plat were delivered to anyone;

(5) The undesirability of requiring an innocent reliant

party to carry the burden of a surveyor's professional mistakes;

(6) That recovery here by a reliant user whose ultimate use was foreseeable will promote cautionary techniques among surveyors.

Based upon a consideration of these factors as presented by this record we hold plaintiffs may recover. (*Rusch Factors; Hedley Byrne & Co., Ltd.* v. *Heller Partners, Ltd.; Du Rite Laundry, Inc.; M. Miller Co.* v. *Central Contra Costa Sanitary District; Texas Tunneling Co.* v. *City of Chattanooga* (E.D. Tenn. 1962), 204 F. Supp. 821; see *Glanzer* v. *Shepard; Brown* v. *Sims; Western Loan Savings Co.; Economy Bldg. & Loan Co.; Dickel* v. *Nashville Abstract Co.; Doyle* v. *Chatham and Phenix Nat. Bank; Motley* v. *Mercantile Trust Co.; Craig* v. *Everett M. Brooks Co.; cf. Vandewater & Lapp* v. *Sacks Builders, Inc.*) To the extent that this holding may be thought contrary to prior decisional law of this State, particularly *National Iron and Steel Co.* v. *Hunt,* 312 Ill. 245, and *Albin* v. *Illinois Crop Improvement Ass'n, Inc.,* 30 Ill. App. 2d 283, such decisions are no longer the law.

Disposition of the liability question leaves unresolved the issues as to the statute of limitations and the allegedly excessive damages.

Defendant contends that plaintiffs' action is *ex contractu* and therefore barred by the statutory limitations governing oral contracts or alternatively by the limitations governing injury to real property. The plaintiffs contend that because the guarantee of accuracy is in writing the applicable statute is section 16 of the Limitations Act (Ill. Rev. Stat. 1961, ch. 83, par. 17.) which reads as follows: "Except as provided in Section 2—725 of the 'Uniform Commercial Code', enacted by the Seventy-second General Assembly, actions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing, shall be commenced within 10

years next after the cause of action accrued; but if any payment or new promise to pay shall have been made, in writing, on any bond, note, bill, lease, contract, or other written evidence of indebtedness, within or after the period of 10 years, then an action may be commenced thereon at any time within 10 years after the time of such payment or promise to pay."

A reading of section 16 makes clear, however, that it was not intended to cover the type of action involved here. Furthermore, to hold the written contract statute of limitations applicable to this action, would be incompatible with our emphasis upon the fact that the basis of the liability affirmed herein is *not* contractual in nature.

The limitation provision that is applicable to this action is section 15 of the Limitations Act (Ill. Rev. Stat. 1961, ch. 83, par. 16) which reads as follows: "Except as provided in Section 2—725 of the 'Uniform Commercial Code', enacted by the Seventy-second General Assembly, actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued."

The all-inclusive phrase "all civil actions not otherwise provided for", has been construed to cover actions for fraud and deceit (*Keithley* v. *Mutual Life Ins. Co.*, 271 Ill. 584, 592; *Bates* v. *Bates Machine Co.*, 230 Ill. 619, 621), and we now hold that it also encompasses actions for tortious misrepresentation; thus, the limitation period is 5 years. The more difficult question is as to when "the cause of action accrued", thereby triggering the statute. As earlier noted, plaintiffs purchased the property in February, 1956, and first became aware of any discrepancies in the location of the lot, driveway and garage about two years before the

trial which began in September, 1964. Defendant contends that the statute commenced to run when the plat was delivered to the builder who ordered it, or, at the latest, from the time the plaintiffs relied on the guarantee. Under either construction the action would be barred. Plaintiffs urge that we follow a "discovery rule" and point out that this court has not dealt with this issue and the policy considerations involved in determining when an action "accrues" as that word is used in various statutes of limitation in this State.

The basic problem is one of balancing the increase in difficulty of proof which accompanies the passage of time against the hardship to the plaintiff who neither knows nor should have known of the existence of his right to sue. There are some actions in which the passage of time, from the instant when the facts giving rise to liability occurred, so greatly increases the problems of proof that it has been deemed necessary to bar plaintiffs who had not become aware of their rights of action within the statutory period as measured from the time such facts occurred. (See *Skinner* v. *Anderson,* 38 Ill.2d 455, 458; *New Market Poultry Farms, Inc.* v. *Fellows,* 51 N.J. 419, 241 A. 2d 633.) But where the passage of time does little to increase the problems of proof, the ends of justice are served by permitting plaintiff to sue within the statutory period computed from the time at which he knew or should have known of the existence of the right to sue. (See *Wanless* v. *Peabody Coal Co.,* 294 Ill. App. 401; *cf. Eichelberger* v. *Homerding,* 317 Ill. App. 125.) Currently, this area of the law is receiving considerable attention as a great majority of the courts adopt a discovery ("known or should have known") rule as to the time at which a cause of action for medical malpractice accrues, particularly where the negligence charged involves leaving foreign objects within the patient at the conclusion of an operation, (*e.g., Flanagan* v. *Mt. Eden General Hospital* (1969), 24 N.Y.2d 427, 248 N.E.2d 871; *Layton* v. *Allen* (Del. 1968), 246 A.2d 794; *Gaddis* v. *Smith*

(Tex. 1967), 417 S.W.2d 577; *Fernandi* v. *Strully* (1961), 35 N.J. 434, 173 A. 2d 277) although some courts have not limited this development to foreign object cases. (*E.g., Frohs* v. *Greene,* (Ore. 1969) 452 P.2d 564; *Yoshizaki* v. *Hilo Hospital* (Hawaii 1967), 433 P.2d 220, 223; *Owens* v. *White* (9th cir. 1965), 342 F.2d 817.) Illinois has been involved in this development. In 1964, an Illinois appellate court (*Mosby* v. *Michael Reese Hospital,* 49 Ill. App. 2d 336) felt compelled to hold that the statute commenced to run at the date of the wrong and not from the date of discovery. The legislature responded by enacting section 21.1 of the Limitations Act (Ill. Rev. Stat. 1965, ch. 83, par. 22.1) providing for a discovery rule as to accrual of foreign object medical malpractice actions.

In *New Market Poultry Farm* v. *Fellows,* 51 N.J. 419, 241 A.2d 633, the New Jersey Supreme Court had before it the question of the date when the limitation period commenced to run on an error in a plat made in 1952 but not discovered to be inaccurate until 1963. The court recognized that in almost identical circumstances courts of that jurisdiction had held the statute ran from the date of the breach of duty. (241 A. 2d at 635.) However, after analyzing the problem in light of the purpose of statutes of limitations ably stated in an earlier opinion, (*Fernandi* v. *Strully,* 35 N.J. 434, 173 A. 2d 277, which established a discovery rule in foreign object medical malpractice cases) that court stated: "Here as in Fernandi, * * * the credibility of plaintiff's claim is not questioned and the incontestable factual pattern presented to us on this motion bespeaks the probability of defendant's negligent fault in acreage calculation. The passage of time does not entail the danger of a fraudulent, false, frivolous, speculative or uncertain claim. Nor is such danger even suggested by defendants. Further, under the said facts it does not appear possible that by reason of the passage of time defendant's testimonial proof of a defense would be made more difficult. The circumstances por-

trayed do not permit a suggestion that Mrs. Pack knowingly slept on her right but to the contrary establish that she brought suit expeditiously after she discovered her alleged actual damage. Accordingly we hold that under the facts and circumstances as presented, the motion for summary judgment should have been denied. Such a result, as noted, is consistent with *Fernandi* and in harmony with the trend in other jurisdictions." (Citations omitted.) 241 A. 2d at 636-37.

We are not limited, however, to the opinion of the *New Market Poultry* case as authority for a discovery rule. After the appellate court first announced its opinion in this case on October 10, 1966, granting judgment for defendant on the basis that plaintiffs' claim was barred by the five-year statute of limitations (an opinion which was later withdrawn) legislation was introduced to provide a specific limitation period for surveyors. Senate Bill No. 676 as originally introduced on March 22, 1967, provided "* * * no action may be brought * * * more than 4 years after the completion of a survey." As finally approved on July 26, 1967, it provides for a discovery rule: "No action may be brought against a Registered Land Surveyor to recover damages for negligence, errors or omissions in the making of any survey nor for contribution or indemnity related to such negligence, errors or omissions more than 4 years after the person claiming such damages actually knows or should have known of such negligence, errors or omissions. This Section applies to surveys completed after the effective date of this amendatory Act of 1967." Ill. Rev. Stat. 1967, ch. 83, par. 24g.

We accordingly hold, in keeping with the more recent authorities and the legislative policy manifested by our General Assembly, that the statute of limitations does not bar plaintiffs' recovery, because their cause of action "accrued" when they knew or should have known of the defendant's

error and they clearly brought suit within 5 years of that time.

Defendant's final contention is that the amount of damages are excessive; that plaintiffs had a duty to mitigate damages and that the cost of moving the garage could not be considered because plaintiffs built that themselves after the lot was purchased.

Plaintiffs' proof of damages consisted of evidence as to the extent of encroachment of the driveway and garage; testimony that as presently located the house was so close to the west boundary that a nonencroaching driveway would be impassable, and testimony of a house moving contractor regarding the cost of moving the house and the garage.

The law is clear that failure to mitigate damages is an affirmative defense and must be pleaded and proved by the defendant. (*New York, Chicago and St. Louis Railroad Co.* v. *American Transit Lines, Inc.,* 408 Ill. 336.) The defendant's trial counsel, not of record in this appeal, made no effort to plead or prove failure to mitigate. Moreover, evidence was offered by the plaintiffs and objected to by defendant that the plaintiffs attempted to arrange a conference between the parties and the encroached-upon neighbor for settlement purposes, but the defendant went to Florida and did not attend the conference. It is abundantly clear that defendant may not now complain that plaintiffs failed to mitigate damages.

The judgment of the circuit court of Cook County is accordingly affirmed and that of the appellate court is reversed.

*Appellate Court reversed;*
*circuit court affirmed.*