**COLEMAN CABLE SYSTEMS, INC., Plaintiff,**

v.

**SHELL OIL COMPANY, a Delaware corporation, Defendant.**

No. 92 C 1817.

United States District Court, N.D. Illinois, E.D.

March 17, 1994.

---

Aram A. Hartunian, Stephen P. Schneck, Aram A. Hartunian & Associates, Chicago, IL, for plaintiff.

Jean Donath Franke, Douglas C. Crone, Tribler & Orpett, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

Coleman Cable Systems, Inc. ("Coleman") sues Shell Oil Company ("Shell") to recover damages for negligence, negligent misrepresentation, breach of warranty and fraud. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Shell moves to dismiss Count I of the complaint which alleges both negligence and negligent misrepresentation.

A plaintiff fails to state a claim upon which relief may be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Leahy v. Board of Trustees of Community College Dist. No. 508*, 912 F.2d 917, 921 (7th Cir.1990) (quoting *Conley v. Gibson*, 355 U.S. 41, 43–45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). These factual allegations may be contained in the complaint or, in some cases, in the plaintiff's responsive brief. *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 78–79 (7th Cir.1992). This Court will "accept as true all the plaintiff's well-pleaded allegations and the inferences reasonably drawn from them." *Yeksigian v. Nappi*, 900 F.2d 101, 102 (7th Cir.

1990). This Court assumes the following facts are true.

Coleman is a manufacturer of electrical cables. Coleman used Elexar 8451 ("Elexar"), a product manufactured and sold by Shell, in its manufacture of plastic insulation and jackets for electrical cables. Elexar has a "contact incompatibility" with PVC compounds, which are also used in the manufacture of the insulation and jackets. A contact incompatibility is a chemical reaction which causes damage to the PVC compounds and renders the electrical cables unsuitable for normal use. As early as 1986, Shell became aware of Elexar's contact incompatibility but failed to warn Coleman or Underwriters Laboratories ("UL") about it.

UL is a non-profit company which supplies safety and technical information to the wire and cable industry. UL's information is based in part on information from companies like Shell who list their products in UL's publications. UL published the information about Elexar that it received from Shell.

Coleman, in reliance upon the information supplied by UL, bought Elexar from Shell and used it in the manufacture of its cables. During 1990 and 1991, Coleman sold electrical cables which had been manufactured with Elexar. The cables became damaged as a result of the contact incompatibility, and Coleman incurred potential and actual liability in excess of $400,000.

Coleman asserts claims of both negligence and negligent misrepresentation in Count I of its complaint. Shell moves to dismiss both claims under the *Moorman* doctrine. The *Moorman* doctrine provides that where only a product is damaged, purely economic losses "caused by qualitative defects falling under the ambit of a purchaser's disappointed expectations" may not be recovered under the tort theories of strict liability, negligence or innocent misrepresentation, which are "appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence." *Moorman Manufacturing Company v. National Tank Company*, 91 Ill.2d 69, 61 Ill.Dec. 746, 753–54, 756, 435 N.E.2d 443, 450–51, 453 (1982). Rather, "[t]he remedy for economic

loss ... relating to a purchaser's disappointed expectations due to deterioration, internal breakdown or nonaccidental cause ... lies in contract." *Id.* 91 Ill.Dec. at 753, 435 N.E.2d at 450. The rationale for the *Moorman* doctrine is that contract law, specifically UCC warranty principles, sufficiently protects a purchaser's economic expectation interests when a product is unfit for its intended use. *Id.* 91 Ill.Dec. at 753–54, 435 N.E.2d at 450–51. According to the Illinois Supreme Court, allowing recovery under tort theories for purely economic losses essentially would force manufacturers to guaranty "that all [their] products would continue to perform satisfactorily throughout their reasonably productive life," something the Illinois legislature clearly did not do when they adopted the UCC. *Id.* 91 Ill.Dec. at 756, 435 N.E.2d at 453.

To avoid application of the *Moorman* doctrine, Coleman casts Shell's negligence in failing to warn of Elexar's contact incompatibility as "separate and independent" of Shell's sale of goods and services. Coleman emphasizes that Shell failed to warn UL of the defect and that Shell had a duty to provide UL with accurate information "apart from defendant's sale of ELEXAR 8451" to Coleman. But in order for Coleman to recover under a negligence theory, Shell's breach of duty must proximately result in damages to Coleman. *Roe v. Catholic Charities,* 225 Ill.App.3d 519, 167 Ill.Dec. 713, 588 N.E.2d 354 (Ct.1992). Coleman suffered damages only after purchasing Elexar and using it in its manufacturing process. The fact remains that Coleman now seeks purely economic losses relating to its disappointed expectations due to Elexar's contact incompatibility, *i.e.,* Elexar's "deterioration, internal breakdown or nonaccidental cause." Recovery here lies in contract, not in tort negligence theory. Clearly, the negligence claim in Count I must be dismissed.

Count I also purports to state a claim for negligent misrepresentation. The *Moorman* court recognized that economic losses are recoverable under negligent misrepresentation if the company is in the business of supplying information for the guidance of others in their business transactions with third parties. *Moorman,* 91 Ill.2d at 755, 61 Ill.Dec. at 755, 435 N.E.2d at 452 (citing *Rozny v. Marnul,* 43 Ill.2d 54, 250 N.E.2d 656 (1969)). To qualify under this exception, Coleman must establish (1) that Shell was in the business of supplying information and (2) that Shell supplied the information to guide others in their business transactions with third parties. *Rankow v. First Chicago Corp.,* 870 F.2d 356, 362 (7th Cir.1989); *Black, Jackson & Simmons Ins. Brokerage, Inc., v. Int'l Business Machs. Corp.,* 109 Ill.App.3d 132, 64 Ill.Dec. 730, 440 N.E.2d 282 (Ct.1982). Shell maintains Coleman cannot satisfy either prong.

A "precise, case-specific inquiry is required to determine whether a particular enterprise is in the business of supplying information." *Rankow,* 870 F.2d at 361. This analysis focuses on the nature of the information and its relation to the particular type of business conducted. *Id.* To date, no manufacturer of tangible noninformational goods has been held to be in the business of supplying information. Any information supplied by the manufacturer was considered merely incidental to the sale of goods. *See, e.g., Knox College v. Celotex Corp.,* 117 Ill.App.3d 304, 72 Ill.Dec. 703, 706, 453 N.E.2d 8, 11 (Ct. 1983) (manufacturer of roofing materials); *Black, Jackson & Simmons Ins. Brokerage, Inc. v. IBM Corp.,* 109 Ill.App.3d 132, 64 Ill.Dec. 730, 440 N.E.2d 282 (Ct.1982) (computer manufacturer); *Tan v. Boyke,* 156 Ill. App.3d 49, 108 Ill.Dec. 229, 508 N.E.2d 390 (Ct.1987) (builder, owner and manager of apartment buildings). *See also National Can Corp. v. Whittaker Corp.,* 505 F.Supp. 147 (N.D.Ill.1981) (manufacturer and supplier of compound used in making seals for bottle caps). In contrast, real estate brokers and termite inspectors whose product consists solely of information (information on the housing market or on termite infestation) have been held to be in the business of supplying information. *See, e.g., Zimmerman v. Northfield Real Estate, Inc.,* 156 Ill.App.3d 154, 109 Ill.Dec. 541, 510 N.E.2d 409 (Ct.1986); *Perschall v. Raney,* 137 Ill. App.3d 978, 92 Ill.Dec. 431, 484 N.E.2d 1286 (Ct.1985).

Coleman is correct that one need not be exclusively in the business of supplying information to qualify for the negligent misrepresentation exception. Coleman suggests Shell falls somewhere in between the roofing manufacturer and the real estate broker because it furnishes both information and noninformational goods. The question in mixed cases is whether the information furnished with the noninformational goods was central to the business transaction. If yes, then Shell is deemed to be in the business of supplying information. *Rankow*, 870 F.2d at 364; *Gerdes v. John Hancock Mut. Life Ins. Co.*, 712 F.Supp. 692, 698 (N.D.Ill.1989).

Some examples of such mixed sellers identified by Illinois courts include banks and stock brokers in the financial industry; they are deemed to be in the business of supplying information because of the "thin line between an exchange of information about finances and actual financial transactions." *See Rankow*, 870 F.2d at 364. That thin line is not present here. There is no case authority that holds a manufacturer of noninformational goods to be in the business of supplying information simply because it gives product information to a non-profit company, such as UL, that later publishes this information along with other product information and advertisements. This is not a new phenomenon in the manufacturing business that can be said to have been overlooked by the *Moorman* court. Manufacturers in all industries must advertise to sell their products, and these advertisements can form the basis of recovery under warranty theories. Recovery under the theory of negligent misrepresentation is not permitted.[1]

This Court cannot distinguish Shell from other manufacturers held not to be in the business of supplying information simply on the basis that it used an outside source to advertise its product, especially a non-profit corporation such as UL. Under Illinois law, manufacturers like Shell are not in the business of supplying information for purposes of the *Moorman* doctrine. Coleman's remedy is limited to an action under contract law, or more specifically UCC warranty principles. The negligent misrepresentation claim is dismissed.

In sum, the motion to dismiss Count I for failure to state a claim is granted. The motion to strike is denied.

---

1. Coleman simply says in the complaint that Shell "used UL to supply safety and technical information about its products, including ELE-XAR 8451, to the wire and cable industry." Coleman then concludes that "at least with respect to its dissemination of safety and technical information to UL concerning ELEXAR 8451, [Shell] was in the business of supplying information that would be used by [Coleman] in [its] business transactions." This is where Coleman's efforts to cast Shell's failure to inform UL of contact incompatibility as "separate and independent" of the sale also proves fatal. The information supplied to UL cannot be "central" to the sale of Elexar to Coleman (as defined under the *Moorman* doctrine) and at the same time "separate and independent" of the sale.