**ORIX CREDIT ALLIANCE, INC.,
Plaintiff–Appellant,**

v.

**TAYLOR MACHINE WORKS, INC., and
William D. Metts, Defendants–
Appellees.**

No. 96–3184.

United States Court of Appeals,
Seventh Circuit.

Argued April 22, 1997.

Decided Sept. 5, 1997.

Michael J. O'Rourke, Thomas G. Griffin, Michael C. Moody (argued), Roseanne Loftus, O'Rourke & Griffin, Chicago, IL, for Plaintiff–Appellant.

Aaron T. Shepley, Brian W. Bell (argued), Swanson, Martin & Bell, Chicago, IL, for Defendants–Appellees.

Before COFFEY, KANNE, and ROVNER, Circuit Judges.

KANNE, Circuit Judge.

Orix Credit Alliance, Inc. ("Orix"), an asset-based commercial lender, loaned $400,000 to Gallo Equipment's Florida division ("Gallo Florida"). To facilitate the capital loan, Orix and Gallo Florida asked Taylor Machine Works ("Taylor") to provide appraisals of certain Taylor-manufactured equipment owned by Gallo Florida that would serve as collateral for the loan. Orix also asked Taylor to agree to repurchase the equipment if Gallo Florida should default on the loan. Orix received these assurances in the form of a faxed letter on Taylor letterhead signed by William Metts, the Director of Marketing for Taylor. Gallo Florida subsequently defaulted on the loan, and Orix demanded that Taylor honor its repurchase agreement. Taylor, however, refused to honor that commitment, stating that the faxed letter was forged and that Metts never made such an agreement.

This litigation ensued, with Orix bringing several claims against Taylor and Metts. The claims at issue here primarily involve Orix's breach of contract, fraud, and negligent misrepresentation causes of action. The district court awarded Taylor judgment as a matter of law on Orix's contract and negligent misrepresentation claims, and the jury returned special verdicts absolving Taylor of liability on Orix's fraud claim. Orix now complains that the district court erroneously granted Taylor's judgment as a matter of law on the breach of contract and negligent misrepresentation claims, that it improperly instructed the jury as to the proper legal standard for fraud, that it wrongfully denied its request to add additional claims against Taylor and Metts, and that it erroneously denied its motion for a new trial. We agree with Orix that the district court did not properly instruct the jury on the fraud claim, and thus reverse on that ground. However, we affirm the district court's decision in all other respects.

## I. History

Orix is a commercial lending institution that specializes in providing financing to companies for purchasing new or used equipment (*i.e.*, a purchase money loan) or for working capital purposes (*i.e.*, a capital loan). As an asset-based lender, Orix has a policy of making only secured loans that are based on

present collateral or "as is" values. In most cases, the primary collateral for these loans is equipment.

Taylor manufactures and sells forklift equipment. One such piece of equipment is the marina forklift-a highly specialized piece of equipment that is used for lifting boats from water to on-land storage racks. Taylor's marketing division was headed by William Metts, who had been an employee at Taylor for thirty-nine years and the director of marketing for twenty years. Taylor sells much of its equipment through dealers that enjoy exclusive territories. One such dealer was Gallo Equipment.

Gallo Equipment is a dealer of new and used forklifts, and has been a dealer of Taylor-manufactured equipment since 1969. Since 1984, Gallo Equipment's Florida branch has had the exclusive right to sell Taylor-manufactured marina forklifts in Texas and all areas east of the Mississippi River. Gallo Equipment and Gallo Florida also service Taylor-manufactured equipment and sell Taylor parts. In 1991, Gallo Equipment sold $3–4 million in Taylor equipment, making it one of Taylor's top ten producers in the United States. By June of that same year, however, Gallo Equipment and its Florida division fell into serious debt with Taylor, with Gallo Florida owing Taylor more than $1 million—all of which was unsecured.

In early 1991, Gallo Florida sought a capital loan from Orix. Gallo Florida originally wanted a $2 million loan, but Orix felt uncomfortable with that amount and reduced it to $400,000. Robert Spoczynski served as Orix's credit manager for the Gallo Florida transaction. In that capacity, Spoczynski had credit authority up to $250,000, and therefore either Orix's operation manager (Don Pokorny) or its branch manager (Gary Modesto) needed to approve the $400,000 Gallo Florida deal.

In May or June 1991, Orix received Gallo Florida's credit application. Spoczynski and William McMillan—the Orix salesman who originally communicated with Gallo Equipment and Gallo Florida—traveled to Florida to view Gallo Florida's operations and see the forklift trucks that would serve as collateral. Although some of the forklifts were in vari-ous states of repair, Ron Gallo, the general manager of Gallo Florida, assured Spoczynski that he could paint the chassis, attach the marina masts, and then sell the equipment like new. Spoczynski also informed Gallo Florida that Orix would need collateral worth one and a half times the value of the loan.

While preparing the loan documents, Spoczynski informed Ron Gallo that he was having trouble verifying the value of the equipment. Ron Gallo assured Spoczynski that this would not be a problem because Gallo Florida had a strong relationship with Taylor—the manufacturer of the equipment—and that he could obtain appraisals from Taylor listing the wholesale values of the equipment. In addition, Ron Gallo told Spoczynski that Taylor would agree to repurchase the agreement from Orix if the loan went into default. Upon Spoczynski's return from Florida, Pokorny and Modesto approved the loan.

Ron Gallo then contacted William Metts so that they could prepare a letter concerning the value of the forklifts that would serve as the collateral. Metts shouldered the responsibility for Taylor's relationship with Gallo Florida and thus was well aware that Gallo Florida was indebted to Taylor for over $1 million in June of 1991. In addition to monitoring the Gallo Florida account, Metts had also provided Gallo Florida with appraisals on Taylor-manufactured equipment, and informed Gallo Florida on the prices of forklifts, discounts, and trade-in values.

Metts provided Ron Gallo with a copy of Taylor letterhead containing Metts's signature and title for Gallo Florida to use when listing the forklifts and their appraised values. Metts, however, did not list any equipment or appraisal values. He knew that Ron Gallo intended to fill in the blank letterhead with the equipment and the appraised values and that the letter would appear as if Metts had written it. At trial, Metts testified that this was the only time he provided a dealer with blank Taylor letterhead with his signature on it. Metts further testified that he never asked for a copy of the letters sent by Ron Gallo using the signed Taylor letterhead.

Ron Gallo, in turn, gave Metts the serial numbers of the Taylor-manufactured marina forklift masts and chassis to be pledged as collateral, and he informed Metts that the machines were either rebuilt or in the process of being rebuilt. Metts then provided Ron Gallo with the retail values of the equipment over the telephone, without ever inspecting the equipment in person. Metts later testified that he understood that Ron Gallo wanted retail values rather than wholesale values for the equipment. The difference between retail and wholesale value can vary from 2% to 20%.

Spoczynski and Ron Gallo then engaged in a string of fax communications regarding the appraisal letter from Taylor. On June 4, 1991, Spoczynski received the first letter from Ron Gallo. The letter, which was on Taylor letterhead and bearing Metts's signature, listed the forklifts, their serial numbers, and their purported wholesale values. In addition, the letter added that "[i]f Gallo fails to meet the loan commitment on the above machines, Tempco [sic] which is a division of Taylor Machines would buy these trucks from Orix." Ron Gallo told Spoczynski that Metts was the most knowledgeable person about the value of the forklifts and that Metts had done such appraisals before. Nonetheless, Spoczynski did not approve of the letter because the listed collateral did not sufficiently cover the loan obligation, the repurchase language was unsatisfactory, and the letter was not signed by an officer or director from Taylor.

In response to Spoczynski's concerns, Ron Gallo sent a second letter to Orix. This letter, also on Taylor letterhead and bearing Metts's signature, added the words "at the above prices" to the repurchase language. Spoczynski again had concerns with this letter due to the insufficient collateral. In addition, Spoczynski asked Ron Gallo why he was faxing the letters rather than someone from Taylor. Ron Gallo replied that Metts was visiting him at the time. Ron Gallo then sent a third letter on June 10, 1991, which added an additional forklift truck to the list of collateral.

Despite the continual revisions, Spoczynski remained unhappy with the content of the appraisal letters. Therefore, Spoczynski prepared a letter himself, faxed it to Ron Gallo, and informed Gallo that the letter was an example of what he needed from Taylor. This draft letter, dated June 4, 1991, included much of the language from the prior letters and added: "TEMTCO ... will buy the above trucks from ORIX Credit Alliance, Inc. for the amount of $505,000.00 U.S. in good funds upon demand." Spoczynski faxed the letter to Gallo Florida and informed Tish Gallo, Ron's sister, that Orix wanted the letter signed by an officer of Taylor rather than the marketing director. Spoczynski testified that Orix wanted an officer's signature, which was the custom and practice at Orix, to alleviate any question of authority.

On June 18, 1991, Spoczynski received the letter he had prepared but with the addition of Metts's signature at the bottom, and the fax information at the top of the page indicated that the letter had been sent from Taylor. Later that day, Spoczynski tried to call Metts but was unable to reach him. A forensic document expert testified at trial that the "William Metts" signature on this letter, as well as the signatures on the other letters, were one and the same as the signature on the blank letterhead Metts provided to Ron Gallo. The expert added that the "William Metts" signature on the letter received June 18 was most likely cut and pasted to the document.

The next day—June 19, 1991—Metts returned Spoczynski's telephone call. Spoczynski testified that Metts assured him that he signed the appraisal letters, that he had the authority to sign off on a letter like this, and that he had signed such letters in the past. In addition, Spoczynski testified that Metts stated that the appraisal prices were wholesale prices.

Metts offered a much different account of these communications. First, he testified that he never saw any of the letters that Orix had sent to Ron Gallo, and that at the time of the June 19 conversation, he had never seen any of the letters that Ron Gallo had provided to Orix. Second, Metts stated that although he confirmed to Spoczynski that he had provided appraisals to Gallo Florida, the June 19 telephone conversation was brief and

Spoczynski never said anything about "wholesale" prices or a repurchase agreement.

On June 21, 1994, Orix funded the $400,000 loan to Gallo. By that time, Orix had never obtained a signature of a Taylor officer or director, nor had Orix received the original Metts-signed letter as promised by Ron Gallo. Despite the absence of an original signed document, Modesto approved the funding of the loan. Gallo Florida subsequently defaulted on its loan obligation, and Orix sought to enforce the repurchase agreement contained in the June 18, 1991 letter. Taylor refused Orix's request, asserting that Metts never signed such an agreement and that the repurchase agreement had been forged.

At the close of the evidence at trial, the district court entered judgment for Taylor on Orix's contract and negligent misrepresentation claims. In regard to Orix's fraud claim, the jury answered in the negative the special verdict inquiries that asked whether Metts either knowingly or intentionally misrepresented to Spoczynski that the appraised values in the Taylor stationery letters were wholesale values.

## II. ANALYSIS

### A. *Judgment As a Matter of Law*

█ We adopt Illinois' standard of review when reviewing a directed verdict made under Illinois law. *Suzik v. Sea–Land Corp.*, 89 F.3d 345, 348 (7th Cir.1996). We must therefore review *de novo* the district court's grant of Taylor's motion for judgment as a matter of law on Orix's breach of contract and negligent misrepresentation claims. *See id.* In doing so, we must determine whether the evidence, when viewed in the light most favorable to the non-moving party (*i.e.*, Orix), so overwhelmingly favors the moving party (*i.e.*, Taylor) that no contrary verdict can stand. *See id.*; *Europlast, Ltd. v. Oak Switch Sys., Inc.*, 10 F.3d 1266, 1270 (7th Cir.1993).

### 1. *Breach of Contract*

█ The district court entered judgment in favor of Taylor on Orix's breach of contract claims because Orix presented insufficient evidence to demonstrate that Metts was authorized to enter into the repurchase agreement on behalf of Taylor. We agree that the uncontroverted evidence demonstrates that Metts had no authority to bind Taylor to the repurchase agreement.

█ The existence and scope of an agency relationship are questions of fact to be determined by the trier of fact "[u]nless the parties['] relationship is so clear as to be undisputed." *Mateyka v. Schroeder*, 152 Ill. App.3d 854, 105 Ill.Dec. 771, 776, 504 N.E.2d 1289, 1294 (1987). In this case, Metts plainly had neither express actual authority nor apparent authority[1] to enter into a repurchase agreement on behalf of Taylor. Orix argues, however, that Metts had implied or inherent actual authority to enter such an agreement. "Implied authority is actual authority that is implied by facts and circumstances and it may be proved by circumstantial evidence." *Wasleff v. Dever*, 194 Ill.App.3d 147, 141 Ill.Dec. 86, 92, 550 N.E.2d 1132, 1138 (1990); *see also Mateyka*, 105 Ill.Dec. at 776–77, 504 N.E.2d at 1294–95. Inherent authority is a related concept derived from the customary authority of persons in particular positions. *See Cange v. Stotler & Co.*, 826 F.2d 581, 591 (7th Cir.1987).

We agree with the district court that nothing in the particular facts and circumstances of this case or in Metts's position as director of marketing demonstrates that he had the implied or inherent authority to bind Taylor to a repurchase agreement. Orix points out that Metts had authority to enter into exclusive dealer agreements, appraise Taylor-manufactured equipment, and approve pricing and trade-in values on sales orders. Orix additionally notes that as the director of marketing, Metts had control over Taylor's sales department including the power to enter into

---

1. "Apparent authority exists where a principal through his words or conduct, creates a reasonable impression that the agent has been granted the authority to perform certain acts." *Wasleff v. Dever*, 194 Ill.App.3d 147, 141 Ill.Dec. 86, 92,

550 N.E.2d 1132, 1138 (1990). It is undisputed that Taylor never created the impression that Metts had the authority to bind Taylor to this repurchase agreement.

agreements creating sales territories and establishing marketing arrangements between Taylor and its dealers. These duties alone, however, do not imply that Metts had the authority to bind Taylor to a repurchase agreement. The mere fact that Metts had entered into working agreements with Taylor's dealers to market Taylor products does not suggest that Metts could bind Taylor to a repurchase agreement with one of its dealer's creditors. In fact, the uncontroverted testimony at trial from Metts and other Taylor employees revealed that Metts never had the authority to enter into a repurchase agreement to protect one of Taylor's dealers should it default on a loan. Moreover, Metts did not have the authority to sign checks, borrow money, or guarantee any other financial obligations on behalf of Taylor. The only information suggesting that Metts had the authority to bind Taylor to a repurchase agreement was the statements of Ron Gallo, who was not a representative of Taylor. Finally, we agree with the district court that there is nothing inherent in the title of director of marketing that gives Metts the power to bind Taylor to such an agreement. *Cf. Chase v. Consolidated Foods Corp.*, 744 F.2d 566, 569 (7th Cir.1984) (noting that giving someone the title of "president" would not give him apparent authority to enter into an unusual or extraordinary contract on behalf of the corporation). Most telling in this regard is the fact that Orix wanted an officer of Taylor, rather than the director of marketing, to sign the repurchase agreement letter so that there would be no question of authority. For whatever reason, Orix approved the loan without an officer's signature, and in doing so, it sealed its fate on its breach of contract claims.

### 2. Negligent Misrepresentation

 The district court also granted judgment as a matter of law for Taylor on

Orix's negligent misrepresentation claim. To recover for negligent misrepresentation in Illinois, a plaintiff must prove that the defendant making the negligent misrepresentation "is in the business of supplying information for the guidance of others in their business transactions."[2] *Rankow v. First Chicago Corp.*, 870 F.2d 356, 362 (7th Cir.1989) (quoting *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 755, 435 N.E.2d 443, 452 (1982)); *see also Fireman's Fund Ins. Co. v. SEC Donohue, Inc.*, 176 Ill.2d 160, 223 Ill.Dec. 424, 428, 679 N.E.2d 1197, 1201 (1997); *Rozny v. Marnul*, 43 Ill.2d 54, 250 N.E.2d 656 (1969) (establishing the tort of negligent misrepresentation in Illinois). In conducting a case-by-case analysis to determine whether a party is in the business of supplying information, *see Rankow*, 870 F.2d at 361, 364, courts focus "on the nature of the information and its relation to the particular type of business conducted," *Coleman Cable Sys., Inc. v. Shell Oil Co.*, 847 F.Supp. 93, 95 (N.D.Ill.1994).

 The district court granted judgment for Taylor on Orix's negligent misrepresentation claim reasoning that Taylor is not "primarily" in the business of supplying information and that the appraisals it provided to Gallo Florida and Orix were merely incidental to its business of manufacturing and selling machinery. We agree with this assessment. Courts have consistently held that manufacturers of tangible noninformational goods—such as chemical compounds, roofing materials, or computer systems-are not in the business of supplying information. *See, e.g., Coleman*, 847 F.Supp. at 95–96; *Knox College v. Celotex Corp.*, 117 Ill.App.3d 304, 72 Ill.Dec. 703, 706, 453 N.E.2d 8, 11 (1983); *Black, Jackson & Simmons Ins. Brokerage, Inc. v. International Business Machines Corp.*, 109 Ill.App.3d 132, 64 Ill.Dec. 730, 732, 440 N.E.2d 282, 284 (1982), *overruled in part*

**2.** In Illinois, the elements for negligent misrepresentation are 1) defendant's duty to communicate accurate information, 2) a false statement of material fact, 3) defendant's carelessness or negligence in ascertaining the truth or falsity of the statement, 4) defendant's intent to induce the other party to act, 5) plaintiff's reliance on the false statement, and 6) plaintiff's damages resulting from that reliance. *See Board of Educ. v. A,*

*C & S, Inc.*, 131 Ill.2d 428, 137 Ill.Dec. 635, 646, 546 N.E.2d 580, 591 (1989). The only element at issue in our analysis is whether Taylor had the duty to communicate accurate information because it is in the business of supplying information for the guidance of others in their business relationships with third parties. *See General Elec. Capital, Corp. v. Equifax Servs., Inc.*, 797 F.Supp. 1432, 1440 (N.D.Ill.1992).

*on other grounds by Fireman's Fund Ins. Co.*, 223 Ill.Dec. at 427, 679 N.E.2d at 1200. In *Coleman*, for example, the court found that a manufacturer that provided product information to a non-profit company for advertisement purposes was not in the business of supplying such information. *Coleman*, 847 F.Supp. at 96. A company, however, need not be exclusively in the business of supplying information to be held liable for negligent misrepresentation. *Id.* In these mixed cases—*i.e.*, situations where a company provides both information and non-informational goods—the dispositive question asks "whether the information furnished with the non-informational goods was central to the business transaction." *Id.*

Orix argues that the present case involves a "mixed" situation. Taylor's primary business involves the manufacture and sale of machines, but Metts and Taylor admitted that they regularly provided appraisals of Taylor equipment to others. While making this concession, however, Metts and Taylor hastened to add that Taylor does not have an appraisal department, it does not charge a fee for providing appraisals, and it does not provide financial services. Looking at these facts, we cannot conclude that Taylor was generally in the business of supplying information—Taylor apparently provides appraisals of its own equipment so that it can sell that equipment or assist its dealers in selling that equipment.

We must admit, however, that Taylor's dealings with Orix appear to be primarily informational—in this case, it is not entirely obvious that the information (*i.e.*, the appraisals) accompanied the noninformational goods (*i.e.*, the marina forklifts) or otherwise assisted the recipient of the information in purchasing or using the noninformational goods. Moreover, the appraisals were plainly central to Orix's loan transaction with Gallo Florida. These factors suggest that Taylor should be classified, at least in this case, as being in the business of supplying information.

A closer look at Taylor's dealings with Orix, however, reveals that the appraisals provided by Taylor were inextricably intertwined with the goods Taylor sells. Like the defendant in *Coleman*, Taylor provided information about its goods so that somebody could determine whether to acquire the goods. In this case, Orix wanted the Taylor machinery as collateral—it wanted to take possession of the forklifts (and then resell them) if Gallo Florida defaulted on the loan. Taylor provided Orix with values (via Ron Gallo) for the forklifts so that Orix would know what and how many machines to ask for as collateral. Supplying such information to Orix is merely incidental to Taylor's main business of manufacturing and selling equipment—it does not fall into the same category of "mixed" sellers such as banks and stock brokers that "are deemed to be in the business of supplying information because of the 'thin line between an exchange of information about finances and actual financial transactions.'" *Coleman*, 847 F.Supp. at 96 (quoting *Rankow*, 870 F.2d at 364). Therefore, we agree with the district court that Taylor, at its core, is a manufacturer that is not in the business of supplying information.

■ Orix offers an alternative ground why the court erred in taking the negligent misrepresentation claim from the jury. It claims that negligent misrepresentation can be shown by demonstrating that *either* the defendant was in the business of supplying information or the defendant had a pecuniary interest in the plaintiff's transaction with a third party. *See Continental Leavitt Communications, Ltd. v. PaineWebber, Inc.*, 857 F.Supp. 1266, 1270 (N.D.Ill.1994) ("[A] negligent misrepresentation plaintiff must show that the defendant was either in the business of supplying information, or that the defendant had a pecuniary interest in the plaintiff's transaction with a third party."); *see also* Restatement (Second) of Torts § 522 (1977) ("One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions . . . ."). Relying upon this theory, Orix asserts that Taylor had a pecuniary interest in supplying the appraisals for Orix's loan agreement with Gallo Florida because Taylor believed Gallo Florida would use the financ-

ing from that loan to eventually help pay on its debt with Taylor.

Orix's argument makes sense, but we doubt that the pecuniary interest theory is viable in Illinois because the Illinois courts have not expressly recognized it. Only *Continental Leavitt* and Restatement § 522 discuss pecuniary interest. Although *Continental Leavitt* applied Illinois law, that district court decision cites no case law from Illinois or elsewhere when discussing the pecuniary interest theory. Moreover, Orix has not cited and we cannot find any Illinois precedent expressly applying the pecuniary interest concept to the facts of a particular case. Significantly, neither *Rozny* nor *Moorman* discuss the pecuniary interest theory. *See Rozny*, 250 N.E.2d at 662–63; *Moorman*, 61 Ill.Dec. at 755, 435 N.E.2d at 452. *Rozny* alluded only to the reasoning, not the language, of Restatement § 552 (which was then in draft form) in creating the tort of negligent misrepresentation in Illinois. The most recent Illinois Supreme Court decision discussing negligent misrepresentation similarly did not mention pecuniary interest: "The focus of *Moorman*'s negligent misrepresentation exception to the economic loss doctrine is whether the defendant is in the business of supplying information for the guidance of others, or whether the information that is supplied is merely ancillary to the sale or in connection with the sale of merchandise or other matter." *Fireman's Fund Ins.*, 223 Ill.Dec. at 428, 679 N.E.2d at 1201; *see also Advent Elecs., Inc. v. Buckman*, 918 F.Supp. 260, 265 n. 4 (N.D.Ill.1996) (declining to expand the scope of negligent misrepresentation in Illinois as suggested by Restatement § 522). Finally, our prior case law discussing negligent misrepresentation in Illinois does not mention even the possibility that a plaintiff can prove its negligent misrepresentation claim by demonstrating that the defendant had a pecuniary interest in the plaintiff's transaction with a third party. *See, e.g., Rankow*, 870 F.2d at 360; *Greycas, Inc. v. Proud*, 826 F.2d 1560, 1565 (7th Cir.1987).

Even if the pecuniary interest theory is viable in Illinois, we find considerable force in the district court's conclusion that the application of that theory in this case would be inappropriate. The court considered Orix's argument that Taylor would benefit by providing the appraisals to Gallo Florida, and it further realized that Taylor "benefits from the prosperity and health of any of its dealers." The court noted, however, that it "is probably very rare that anyone engaged in business does anything from motives that are exclusively altruistic." Therefore, if any benefit or expectation of benefit "removes the furnishing of information from the incidental category, then you have eliminated the rule. The exception would literally swallow the rule." Because we agree with this reasoning, we affirm the district court's judgment for Taylor on the negligent misrepresentation claim.

B. *Special Interrogatories Regarding Fraud*

Orix next claims that the district court failed to instruct the jury regarding the proper legal standard for fraud in Illinois. Specifically, the court refused to instruct the jury that Orix could prove its fraud case by demonstrating that Taylor acted with a reckless disregard for the truth or falsity of its representations. Instead, the court only instructed the jury that Orix could prove its case by showing that Taylor knowingly or intentionally misrepresented material facts. Because we agree that the district court erred in refusing to instruct the jury about reckless disregard, we reverse and remand for a new trial on the fraud count.

Before we can discuss the merits of Orix's claim, however, we must consider whether Orix waived this argument by failing to object adequately to the special verdict questions and the court's refusal to give Orix's proposed supplemental instructions regarding the special verdicts. Taylor asserts that Orix waived any argument regarding the instructions and special verdicts because Orix's mere submission of proposed instructions does not sufficiently "preserve an error in failing to give those instructions; the party who wants the instruction given must object to the refusal to give the instruction." *Salazar v. City of Chicago*, 940 F.2d 233, 242 (7th Cir.1991); *see also Gordon v. Degelmann*, 29 F.3d 295, 298 (7th Cir.1994). Fed-

eral Rule of Civil Procedure 51 requires such objections so that parties will "alert the judge [of] their reasons, so that the court may resolve legal disputes with full information and avoid all errors that are avoidable." *Hebron v. Touhy*, 18 F.3d 421, 424 (7th Cir. 1994). In *Hebron*, for example, we assumed that a proposed instruction served as an "objection" but nonetheless found waiver because the party that proposed the instruction did not discuss the relevant issues or otherwise "furnish the district judge with the tools of decision." *Id.; see also Gordon*, 29 F.3d at 298.

■■■■ This case is plainly distinguishable from both *Hebron* and *Gordon*. Here, Orix provided proposed instructions to supplement the special verdicts that had been previously drafted by the court and the parties. The court then refused to give Orix's supplemental instructions, stating that this "is not a case of reckless disregard." At that point, Orix asked the court if it could "comment" on the court's ruling regarding the reckless disregard instructions corresponding to the first two special verdict questions.[3] Orix then argued at length that the facts of this case illustrate reckless disregard and that Illinois law deems such reckless and careless representations as actionable. The court responded, "Okay, I have your point. Motion denied." Unlike the parties in *Hebron* and *Gordon*, Orix stated "distinctly the matter objected to and the grounds of the objection," Fed.R.Civ.P. 51, and therefore provided the court "with full information" so that the court could "avoid all errors that are avoidable," *Hebron*, 18 F.3d at 424. *See also Gordon*, 29 F.3d at 298.

If Orix had addressed the court using the word "objection" rather than "comment," or if it had noted its objection to the original special verdicts "on the record" once the court continued the proceedings after the jury instruction conference, no one could have disputed that Orix would have preserved its right to appeal the court's rulings. We are not overly formalistic about the proper way to preserve issues for appeal-a proposition clearly demonstrated by this opinion—but we note that simple use of the words "I object" would likely have saved everyone from having to address the waiver issues in this case.

■■■■ Now that we have determined that Orix did not waive its arguments regarding the reckless disregard instructions, we can entertain the merits of Orix's contention. Even though a district court has broad discretion to frame a special verdict question, we must reverse a "judgment entered upon an answer to a question which inaccurately frames the issue to be resolved by the jury." *Umpleby v. Potter & Brumfield, Inc.*, 69 F.3d 209, 214 (7th Cir.1995). We therefore review a district court's jury instructions and special verdicts as a whole and reverse when they convey an inadequate or misleading impression of the law that affects the jury's understanding of those issues to the prejudice of the complaining party. *See Heller Int'l Corp. v. Sharp*, 974 F.2d 850, 856 (7th Cir.1992).

■■■■ As noted above, the district court refused to give Orix's proposed reckless disregard instructions to supplement the special verdict form. Illinois law,[4] however, provides that a party need not demonstrate an express fraudulent intent in order to prove its fraud claim. *Duhl v. Nash Realty Inc.*, 102 Ill.App.3d 483, 57 Ill.Dec. 904, 911, 429

---

**3.** We do find, however, that Orix did waive any argument regarding the proposed instruction that corresponded with the third special verdict question on the fraud count. This argument is waived because Orix's "comment" pertained only to "the Court's ruling on the first two instructions on reckless disregard."

Even if Orix had properly objected, however, we would find that the court correctly instructed the jury with the third special verdict question. That question asked whether Metts sent or authorized the sending of the letter faxed to Orix on June 4, 1991. Orix sought to add to that special verdict by instructing the jury that Metts could have authorized the sending of the June 4 letter if Metts was later made aware of the letter "and remained silent about it." The district court did not abuse its discretion in refusing to give this supplemental instruction because the original special verdict provided an accurate statement of the issue in light of the evidence at trial.

**4.** We apply Illinois law because federal courts sitting in diversity apply the substantive law of the state in which the suit was brought. *See Heller Int'l Corp.*, 974 F.2d at 856.

N.E.2d 1267, 1274 (1981); *see also Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 128 Ill.2d 179, 131 Ill.Dec. 155, 161–62, 538 N.E.2d 530, 536–37 (1989). Rather, a party can satisfy the fraudulent intent element [5] by proving that a misrepresentation was made knowingly or with a reckless disregard for its truth or falsity. *Gerill Corp*, 131 Ill.Dec. at 161, 538 N.E.2d at 536; *Duhl*, 57 Ill.Dec. at 911, 429 N.E.2d at 1274. In other words, "statements made in culpable ignorance of their truth or falsity are fraudulent." *Duhl*, 57 Ill.Dec. at 911, 429 N.E.2d at 1274.

Relying on its view of the evidence, the district court refused to give Orix's additional instructions concerning reckless disregard and prevented Orix from discussing the reckless disregard standard in its closing argument. In so ruling, the court stated that "this is a case where Metts either knew or didn't know that the letters on the letterhead referred to wholesale values.... He didn't recklessly disregard anything in that conversation.... That is not a case of reckless disregard." For this reason, the court limited the jury's consideration to whether Taylor knowingly or intentionally misrepresented material facts regarding whether the appraised values were wholesale or retail.

 While we understand the district court's laudable desire to narrow the issues in this complicated case through the use of special verdicts and although we agree that carelessness, by itself, cannot support an inference of fraud, *see Brazell v. First Nat. Bank and Trust Co. of Rockford*, 982 F.2d 206, 208 (7th Cir.1992), we nonetheless believe that Orix should have been able to present its reckless disregard theory to the jury. The district court appears to have excluded reckless disregard from this case because Spoczynski and Metts testified differently regarding the content of their June 19 telephone conversation. Specifically, the two provided conflicting testimony regarding whether Metts ever confirmed that the appraisals were at wholesale value. Based on

this testimony, the court apparently reasoned that the jury could find one of two things—that Metts either lied or did not lie about his knowledge of whether the values provided to Orix were wholesale values. The district court thus thought that this was a case of either knowing misrepresentation or no misrepresentation at all. This view of the facts, however, overlooks another possible basis for liability—even if Metts did not lie about the wholesale value issue, Taylor and Metts may have been culpably ignorant about the truth or falsity of the representations made in the letter sent to Orix.

First of all, Metts sent Ron Gallo the blank Taylor letterhead with his signature and title, and he did so knowing that Gallo would use the letterhead to forward appraisals of Taylor-manufactured equipment that Metts never inspected. Despite giving Ron Gallo the blank letterhead, Metts never asked for copies of the appraisal letters sent to Orix, he never asked what language was used in these letters, and he never verified the exact equipment and corresponding value described in the letters. Even more telling, Metts commented that it was really no concern of his what Gallo did with the appraisal letters even though he was well aware of Gallo Florida's dire financial straights and desperate need for financing.

The June 19, 1991 telephone conversation between Metts and Spoczynski arguably provides further evidence of Metts's reckless disregard for the truth or falsity of the representations in the appraisal letters. In essence, Metts asked no questions and he informed Spoczynski that everything in the letters was accurate. According to Spoczynski, Metts assured him that he signed the appraisal letter, that he had the authority to sign the letter, and that he verified the wholesale prices in the letter. Metts disputes this testimony, claiming that their conversation was short and that he told Spoczynski only that he provided appraisals to

---

**5.** In Illinois, the elements of common law fraud are: (1) a false statement of material fact; (2) defendant's knowledge or belief that the statement was false; (3) defendant's intent to induce plaintiff to act; (4) plaintiff's reliance on the truth of the statement; and (5) plaintiff's dam-

ages resulting from that reliance. *Board of Educ.*, 137 Ill.Dec. at 646, 546 N.E.2d at 591. The issue here, of course, involves the second element—defendant's knowledge of the falsity of the statement.

Ron Gallo. Nonetheless, Metts failed to tell Spoczynski that he never saw the letters containing the appraisals, that the appraisal values were retail rather than wholesale, or that the appraisal values were based on the assumption that the equipment was rebuilt to factory specifications.

As a whole, the evidence reveals that Metts represented the values of various machines to Ron Gallo, Metts knew that Ron Gallo—whose company was in dire financial straits—provided those representations to Orix on Taylor letterhead, but Metts never checked to see what representations were actually made to Orix under his name. While this evidence may not convince the jury that Taylor and Metts recklessly disregarded the truth or falsity of their representations, we believe that the jury should have been able to make that determination.

Finally, the omission in the special verdicts was "crystallized" by defense counsel's closing argument, see *Bronk v. Ineichen*, 54 F.3d 425, 431 (7th Cir.1995), which maintained that Metts's actions may have been a mistake, but they did not constitute "intentional fraud." Considering these factors, we find that the district court erred in refusing to permit Orix to present its reckless disregard theory to the jury. We additionally note that our decision here was not an easy one, and it admittedly requires both the district court and the jury in the next trial to make difficult determinations regarding Taylor's and Metts's recklessness throughout these communications. Nonetheless, we believe that Illinois precedent requires that a jury consider such recklessness.

### C. *Motion for Leave to File a Third Amended Complaint*

■ Orix next claims that the district court erred in refusing to permit it to amend its complaint. At the close of the evidence, Orix sought to amend its complaint to conform to the proof at trial by adding an additional count against Metts for fraud and a count against both Taylor and Metts for a scheme to defraud. The court denied Orix's motion for leave to amend its complaint, stating that no new facts have surfaced in regard to Metts and therefore Orix had no reason

for waiting so long to amend its complaint. More importantly, however, the court denied the motion because the new counts could have prejudiced Metts because they added the possibility of punitive damages, a consequence that Metts might have sought to protect himself against had the claims been raised earlier.

■ The Federal Rules of Civil Procedure provide that courts should freely permit parties to amend their complaints, even after judgment, where there is no harm to the defendant. *See U.S. v. Security Pacific Business Credit, Inc.*, 956 F.2d 703, 707–08 (7th Cir.1992); see also Fed.R.Civ.P. 15(a), (b). We have further provided that courts should generally allow such amendments unless there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Ferguson v. Roberts*, 11 F.3d 696, 706 (7th Cir.1993) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)). Generally, the decision whether to grant a party leave to amend the pleadings is a matter left within the discretion of the district court, *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 773 (7th Cir.1995), and therefore we will reverse that decision only if the district court abused its discretion, *Bisciglia v. Kenosha Unified Sch. Dist. No. 1*, 45 F.3d 223, 226 (7th Cir.1995).

We believe that the district court did not abuse its discretion in denying Orix's motion for leave to amend. In its brief, Orix provides some valid reasons explaining its four-year delay in amending its complaint. For example, Metts did not answer the original complaint until the day of the trial and the court did not rule on Metts's prior motion to dismiss (based on the fiduciary shield doctrine) until January 9, 1996—a little more than five months before the trial. Orix's argument falters, however, because it asserts that the new counts could not have surprised Metts because the third amended complaint did not add any new facts or parties. In this assertion, Orix makes Metts's argument—

because there were no new facts, there is no reason why Orix could not have amended the complaint at an earlier date.

Moreover, the new counts do add an element of surprise—they add the prospect of punitive damages for Metts. Metts persuasively points out that had he known of the fraud claim prior to trial, he may have taken different measures—such as retaining counsel independent from Taylor—to protect himself from the additional liability. The potential prejudice to Metts, coupled with Orix's undue delay in seeking to amend its complaint, provided the district court with adequate grounds to deny Orix's motion for leave to amend. We therefore find that the court did not abuse its discretion in doing so.

### D. *Motion for a New Trial*

Based on the above errors, Orix filed a motion for a new trial, which the district court rejected. Orix's final appellate claim asserts that the court erred in denying this motion and that each of the above errors were substantial and severely prejudicial. As detailed above, we believe that the court erred only in refusing to instruct the jury regarding reckless disregard on the fraud claim, and we therefore Reverse that ruling and Remand for a new trial on fraud. We also believe, however, that the district court did not err in granting Taylor judgment as a matter of law on the contract and negligent misrepresentation claims or in refusing to permit Orix to file a third amended complaint, and we therefore Affirm the court's rulings in those respects.