**FREMONT FINANCIAL CORP., Plaintiff,**

v.

**IPC/LEVY, INC., Defendant.**

No. 97 C 4632.

United States District Court, N.D. Illinois, Eastern Division.

March 9, 1998.

---

Kenneth Steven Ulrich, Deborah Rzasnicki Hogan, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Chicago, IL, for Plaintiff.

Michael A. Haber, Chicago, IL, Arnold H. Landis, Law Office of Arnold H. Landis, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is defendant IPC/Levy, Inc.'s motion to dismiss plaintiff Fremont Financial Corporation's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the court denies defendant's motion to dismiss.

### I. BACKGROUND

The complaint alleges the following facts which, for the purpose of ruling on this motion, are taken as true. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Plaintiff Fremont Financial Corporation ("Fremont") is in the secured lending business. Defendant IPC/Levy, Inc. ("IPC") is in the business of appraising and conducting auctions of industrial machinery and equipment and, as of 1992, was on Fremont's list of approved appraisers.

Two other entities are also involved in this case: North American Wood Products ("North American") and NAWP Acquisition Corp. ("NAWP"). North American was a manufacturing company which had three separate divisions, two which manufactured particle board and one which manufactured veneer. NAWP purchased North American in 1996.

In 1992, Fremont loaned money to North American based on an appraisal of equipment owned by North American. The appraisal was prepared by IPC. In October of 1994, North American requested some changes to the existing lending relationship between it and Fremont. Before approving the requested changes, Fremont required that a new appraisal be performed on the equipment. IPC prepared a second appraisal of North American's equipment. Based on that appraisal, Fremont approved the requested modifications to the lending relationship.

North American's performance in 1995 was poor and, in early 1996, North American requested additional financing support from Fremont either to effectuate a turnaround or to provide time for North American to find a buyer for the company. In conjunction with the request for additional financing support, North American had IPC prepare a third appraisal of North American's equipment. IPC prepared the appraisal in March of 1996 ("the 1996 appraisal"). The 1996 appraisal indicated that the forced liquidation value of the equipment was between $1,530,000 and $1,600,000. Based on the 1996 appraisal, Fremont agreed to several credit changes requested by North American, including an agreement to finance NAWP's purchase of North American's personal property assets and to provide working capital financing to NAWP thereafter and to release the three principals of North American from their personal guarantees.

On January 16, 1997, NAWP ceased all business operations because it was unable to turn the company around. NAWP, with Fremont's permission, entered into an auction agreement with IPC, pursuant to which IPC agreed to conduct an auction of the equipment used in connection with NAWP's Evanston, Indiana particle board operation ("the Evanston particle board equipment").

The auction was scheduled for February 27, 1997.

On January 29, 1997, NAWP and Fremont entered into a letter agreement pursuant to which NAWP acknowledged the existence of certain events of default under the loan documents and surrendered possession of the collateral to Fremont for disposition. Fremont decided to proceed with the auction and entered into an auction agreement with IPC.

On several different occasions between December of 1996 and February 27, 1997, IPC represented to both NAWP and Fremont that the auction of the Evanston particle board equipment would generate at least $600,000 after expenses. Based on IPC's representations, Fremont proceeded with the February 27, 1997 auction. The auction only generated approximately $46,500 net of expenses.

After the auction, Fremont contacted two nationally prominent equipment appraisers and liquidators to discuss the 1996 appraisal. According to both appraisers, the 1996 appraisal greatly overstated the value of the equipment.

On June 27, 1997, Fremont filed suit against IPC in this court. This court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, as there exists complete diversity between the parties and the amount in controversy exceeds $75,000. In its complaint, Fremont alleges that IPC negligently misrepresented that (1) the value of the equipment owned by North American in March of 1996 was worth $1,500,000 and (2) the auction of the Evanston particle board equipment would generate at least $600,000 in proceeds. IPC has filed a motion to dismiss Fremont's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Fremont's complaint fails to state a claim for negligent misrepresentation.[1]

## II. DISCUSSION

### A. Standard for deciding Rule 12(b)(6) motion to dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Cromley v. Board of Educ. of Lockport, 699 F.Supp. 1283, 1285 (N.D.Ill.1988). If, when viewed in the light most favorable to the plaintiff, the complaint fails to state a claim upon which relief can be granted, the court must dismiss the case. See FED.R.CIV.P. 12(b)(6); Gomez v. Illinois State Bd. of Educ., 811 F.2d 1030, 1039 (7th Cir.1987). However, the court may dismiss the complaint only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### B. Negligent misrepresentation

In its complaint, Fremont attempts to state a claim against IPC for negligent misrepresentation. The parties do not dispute that Illinois substantive law governs this diversity action. In Illinois, the elements for negligent misrepresentation are (1) the defendant's duty to communicate accurate information; (2) a false statement of material fact; (3) the defendant's carelessness or negligence in ascertaining the truth or falsity of the statement; (4) the defendant's intent to induce the other party to act; (5) the plaintiff's reliance on the false statement; and (6) the plaintiff's damages resulting from that reliance. Board of Educ. of City of Chicago v. A, C & S, Inc., 131 Ill.2d 428, 137 Ill.Dec. 635, 546 N.E.2d 580, 591 (1989).

IPC argues that Fremont has failed to state a claim against IPC for negligent misrepresentation because the complaint fails to allege sufficiently that IPC owed any duty to Fremont. IPC does not argue that the complaint fails to allege the other requisite elements of a negligent misrepresentation claim. Therefore, the court's opinion is limited to the issue of whether the complaint sufficiently alleges that IPC owed Fremont a duty to communicate accurate information.

---

1. IPC also argues in its brief that Fremont has failed to state a claim "sounding in contract." However, as Fremont points out, Fremont's complaint "does not purport to state a claim for anything other than negligent misrepresentation." Therefore, the court need not address IPC's argument that Fremont's complaint does not state a contract claim.

■ Whether a defendant owes the plaintiff a duty is a question of law to be decided by the court. *Rhodes v. Illinois Cent. Gulf R.R.*, 172 Ill.2d 213, 216 Ill.Dec. 703, 665 N.E.2d 1260, 1267 (1996) (citing *Gouge v. Central Ill. Pub. Serv. Co.*, 144 Ill.2d 535, 163 Ill.Dec. 842, 582 N.E.2d 108, 111, (1991)). Illinois courts imply a duty to communicate accurate information in situations involving one who in the course of his business or profession supplies information for the guidance of others in their business transactions. *Orix Credit Alliance v. Taylor Mach. Works*, 125 F.3d 468, 475 n. 2 (7th Cir.1997); *General Elec. Capital, Corp. v. Equifax Servs., Inc.*, 797 F.Supp. 1432, 1440 (N.D.Ill.1992); *August, Bishop & Meier, Inc. v. Premium Link, Ltd.*, 738 F.Supp. 1166, 1169 (N.D.Ill. 1990). In certain situations, that defendant may owe that duty to one who is not in privity with him. *See Rozny v. Marnul*, 43 Ill.2d 54, 250 N.E.2d 656, 663 (1969); *Rosenstein v. Standard & Poor's Corp.*, 264 Ill. App.3d 818, 201 Ill.Dec. 233, 636 N.E.2d 665, 668 (1993).

Based on the above, in order to determine whether the complaint has sufficiently alleged that IPC owed Fremont a duty, the court must make two determinations. First, the court must determine whether the complaint sufficiently alleges that IPC had a duty to communicate accurate information because it was in the business of supplying information for the guidance of others in their commercial transactions. Second, if IPC had such a duty, the court must determine whether the complaint sufficiently alleges that IPC owed that duty to Fremont.

### 1. Whether IPC was in the business of supplying information

■ The court first must determine whether the complaint sufficiently alleges that IPC owed a duty to communicate accurate information because it was in the business of supplying information for the guidance of others in their commercial transactions. To be "in the business of supplying information," two requirements must be met: (1) the defendant must supply the information in the course of his business and (2) the information must be supplied for the guidance of others in their business transactions. *Black, Jackson &*

*Simmons Ins. Brokerage, Inc. v. IBM Corp.*, 109 Ill.App.3d 132, 64 Ill.Dec. 730, 440 N.E.2d 282, 284 (1982); *Rankow v. First Chicago Corp.*, 870 F.2d 356, 362 (7th Cir.1989); *see also Trans States Airlines v. Pratt & Whitney Can., Inc.*, 177 Ill.2d 21, 224 Ill.Dec. 484, 682 N.E.2d 45, 48 (1997) (holding that there is no requirement that those business transactions be made with third parties). To determine whether a defendant is "in the business of supplying information," the court must make a "precise, case-specific inquiry." *Rankow*, 870 F.2d at 361 (7th Cir.1989). This inquiry must focus on the nature of the information at issue and its relation to the kind of business being conducted. *Id.*

A defendant need not be exclusively in the business of supplying information to be held liable for negligent misrepresentation. *Orix Credit Alliance*, 125 F.3d at 475. In a situation where the defendant supplied both information and non-informational goods or services, the dispositive question asks "whether the information furnished with the non-informational goods [or services] was central to the business transaction." *Id.* A company who supplies information which "is merely ancillary to the sale or in connection with the sale of merchandise or other matter" is not "in the business of supplying information." *Fireman's Fund Ins. Co. v. SEC Donohue, Inc.*, 176 Ill.2d 160, 223 Ill.Dec. 424, 679 N.E.2d 1197, 1201 (1997).

In this case, the complaint alleges that IPC made two separate types of misrepresentations: (1) the misrepresentations in the 1996 appraisal and (2) the misrepresentations as to the expected proceeds from the 1997 auction. The court must analyze each of these misrepresentations separately to determine if IPC had a duty to communicate accurate information with respect to each.

■ First the complaint alleges that IPC made misrepresentations in the 1996 appraisal. The complaint alleges that (1) IPC is an equipment appraiser which is in the business of supplying information for the guidance of others in their commercial transactions and (2) IPC was acting as an equipment appraiser when it made the 1996 appraisal. A reasonable inference is that the 1996 appraisal

was supplied for the guidance of secured lenders in determining whether to loan North American money. Thus, the complaint sufficiently alleges that IPC was in the business of supplying information when it made the alleged misrepresentations in the 1996 appraisal.

The complaint also alleges that IPC made misrepresentations as to expected proceeds from the 1997 auction. A reasonable inference is that (1) IPC either was acting as an equipment appraiser when it made the misrepresentations as to the expected proceeds or was acting as an auctioneer and the misrepresentations as to the amount of the expected proceeds were central to the decision as to whether to proceed with the auction and (2) the misrepresentations regarding the expected proceeds were supplied so that NAWP and/or Fremont could decide whether to proceed with the auction. Thus, the complaint sufficiently alleges that IPC was in the business of supplying information when it made the alleged misrepresentations as to the expected proceeds. Because the complaint sufficiently alleges that IPC was in the business of supplying information when it made the alleged misrepresentations, the complaint sufficiently alleges that IPC had a duty to convey accurate information with respect to both types of misrepresentations.

### 2. Whether IPC owed its duty to communicate accurate information to Fremont

■ Having determined that IPC had a duty to communicate accurate information, the court must now determine whether the complaint sufficiently alleges that IPC owed that duty to Fremont. Privity between the defendant and the plaintiff is not required to establish a duty to convey accurate information. *Rozny*, 250 N.E.2d at 662; *Merit Ins. Co. v. Colao*, 603 F.2d 654, 659 (7th Cir.1979). Rather, liability extends to those who rely on the information supplied if (1) use of the information was foreseeable; (2) the defendant knew the information would be used and relied upon by persons other than those in privity with him; and (3) the defendant's potential liability is restricted to a comparatively small group. *Rozny*, 250 N.E.2d at 662–63; *Rosenstein*, 201 Ill.Dec. 233, 636 N.E.2d at 668; *Credit Gen. Ins., Co. v. Mid-*

*west Indemnity Corp.*, 916 F.Supp. 766, 773 (N.D.Ill.1996); *see Merit*, 603 F.2d at 659.

■ First, the court must determine whether IPC's duty to convey accurate information in the 1996 appraisal extended to Fremont. The complaint alleges that Fremont relied on the 1996 appraisal in deciding whether to loan money to North American. The complaint also alleges that IPC knew that Fremont would rely on the alleged misrepresentations in the 1996 appraisal because (1) IPC and Fremont had a direct relationship; (2) IPC was one of Fremont's list of approved appraisers; and (3) IPC knew that North American was one of Fremont's borrowers. It is reasonable to infer from these allegations that it was foreseeable to IPC, and that IPC knew, that Fremont would rely on the 1996 appraisal when determining whether to loan North American money. Further, under the circumstances, IPC's potential liability would be restricted to a comparatively small group—those entities which IPC knew were secured lenders of North American and which loaned North American money based on the 1996 appraisal. Thus, the court finds that the complaint sufficiently alleges that IPC owed Fremont a duty to convey accurate information in the 1996 appraisal.

Next the court must determine whether IPC's duty to convey accurate information with respect to the alleged misrepresentations regarding the expected proceeds from the 1997 auction extended to Fremont. The complaint alleges that Fremont relied on the misrepresentations as to the expected proceeds when it made the decision whether to proceed with the auction. The complaint also alleges that (1) when NAWP surrendered possession of the collateral to Fremont, Fremont and IPC entered into an auction agreement; (2) IPC made the misrepresentations directly to Fremont on at least three different occasions; and (3) IPC knew that Fremont would rely on the misrepresentations regarding the expected auction proceeds. It is reasonable to infer from these allegations that it was foreseeable to IPC, and IPC knew, that Fremont would rely on IPC's misrepresentations regarding the expected auction proceeds in making its

decision whether to proceed with the auction. Further, under the circumstances, IPC's potential liability would extend only to those secured lenders who IPC knew had a pecuniary interest in the outcome of the auction and to whom IPC had made direct misrepresentations as to the expected proceeds. Thus, the court finds that the complaint sufficiently alleges that IPC owed Fremont a duty to convey accurate information as to the expected proceeds from the 1997 auction.

IPC relies on three cases, *Popp v. Dyslin*, 149 Ill.App.3d 956, 102 Ill.Dec. 938, 500 N.E.2d 1039 (1986), *Robin v. Falbo*, No. 91 C 2894, 1992 WL 188429 (N.D.Ill. July 24, 1992), and *Frymire v. Peat, Marwick, Mitchell & Co.*, 657 F.Supp. 889 (N.D.Ill.1987), in arguing that its duty to convey accurate information did not extend to Fremont. However, those cases are distinguishable from the case at bar. In those three cases, the court refused to recognize a duty owed to the plaintiff who was not in privity with the defendant because the plaintiff did not fall within a narrow class of persons and, thus, the defendant's potential liability would have been overwhelming. At this stage of the litigation, there is no such concern in this case because, as explained above, the duty that Fremont alleges is owed to it is narrowly confined to a limited class of persons and/or entities.

### III. *CONCLUSION*

In sum, the court finds that Fremont has sufficiently alleged that IPC owed Fremont a duty to convey accurate information. Accordingly, the court denies defendant IPC/Levy, Inc.'s motion to dismiss plaintiff Fremont Financial Corporation's complaint.